INTERNATIONAL CHEMICAL WORKERS UNION And Local 526 of the International Chemical Workers Union, Plaintiffs-Appellees,

v.

DAY & ZIMMERMANN, INC., Defendant-Appellant.

No. 85–2471.

United States Court of Appeals, Fifth Circuit.

June 9, 1986.

LeRoy Autrey, Texarkana, Ark., for defendant-appellant.

Salvatore J. Falletta, Gen. Counsel, Akron, Ohio, for plaintiffs-appellees.

Before WILLIAMS, GARWOOD and JONES, Circuit Judges.

JERRE S. WILLIAMS, Circuit Judge:

The International Chemical Workers Union and Local 526 (union) brought this action against Day & Zimmermann, Inc. (company) pursuant to § 301 of the Labor Management Relations Act, 29 U.S.C. § 185, to enforce an arbitrator's award in a labor dispute. The district court granted enforcement. We affirm.

The union is the exclusive bargaining representative for certain production, inspection, stores, and maintenance employees of the company at the U.S. Govern-

ment-owned and U.S. Army-controlled Lone Star Army Ammunition Plant. The plant is located within a federal enclave near Texarkana, Texas.

In 1980, the union filed a grievance contending that the company had violated the 1978–81 collective bargaining agreement. The grievance complained of "work being done by subcontractors of digging out and other related work in maintenance of street work on the plant site..." The union's complaint was based upon the contention that the U.S. Army Corps of Engineers was performing road work which was customarily performed by bargaining unit employees. The company responded that it had no control over the decisions of the Army Corps of Engineers as to the work it would do. Thus there was no violation of the contract.

This grievance was taken to arbitration by the union under the terms of the labor contract. The arbitrator found that the company had not subcontracted any street work, but, nevertheless, the company had violated the agreement when the U.S. Army did work customarily done by bargaining unit employees. The arbitrator found that this constituted a breach of Article II § 4 of the agreement, which provides in pertinent part:

> No persons excluded from the bargaining unit shall be permitted any of the work customarily done by those employees included in the bargaining unit.

The company refused to accept the arbitrator's award, and the union brought suit in district court for enforcement. The district court enforced the award, emphasizing the deference that must be given an arbitrator's decision. Because the arbitrator had not yet made a concrete award of damages, the district court remanded the grievance to the arbitrator to fashion an appropriate monetary remedy. The arbitrator was also directed to determine whether the award would include compensation for violations under collective bargaining agreements entered into subsequent to the expiration of the 1978–81 agreement.

On appeal to this Court, the company argues that the district court erred in upholding the arbitrator's award because: (1) the grievance was not arbitrable; (2) the arbitrator's award did not draw its "essence" from the contract; and (3) the court overstepped its authority in remanding to the arbitrator the issue of whether the award would apply to collective bargaining agreements subsequent to the 1978–81 agreement.

## I. DECISION OF THE ARBITRATOR

As the Supreme Court established in the *Steelworkers* trilogy,[1] a court reviewing an arbitration award may not address issues that go to the "intrinsic merits" of a dispute, and must limit its review to (1) whether the subject matter of the dispute is "arguably arbitrable"; and (2) whether the award draws its "essence" from the collective bargaining agreement. *See International Ass'n of Machinists v. Texas Steel*, 639 F.2d 279, 281 (5th Cir.1981).

*Arbitrability*

 The company contends that the dispute was not arbitrable. The company first argues that the grievance complained only of the company's subcontracting work, not work performed by the U.S. Army. We note that "labor grievances are not subject to the same niceties of pleading applicable in federal courts; and that ... substance must prevail over procedural technicalities." *Id.* at 282. Of substantial weight is the fact that in a conference with the arbitrator concerning the scope of the grievance before him, counsel for the company expressly gave the arbitrator authority to frame the issue when he stated:

> I think possibly the best thing to do is to let the arbitrator hear it, and when he

1. The *Steelworkers* trilogy consists of *Steelworkers v. American Mfg. Co.*, 363 U.S. 564, 80 S.Ct. 1343, 4 L.Ed.2d 1403 (1960); *Steelworkers v. Warrior & Gulf Navigation Co.*, 363 U.S. 574, 80 S.Ct. 1347, 4 L.Ed.2d 1409 (1960); and *Steelworkers v. Enterprise Wheel & Car Corp.*, 363 U.S. 593, 80 S.Ct. 1358, 4 L.Ed.2d 1424 (1960).

writes his opinion to decide what the issue is.

The arbitrator characterized the issue posed as whether the company had breached the labor agreement when work "within the plant site was performed by persons not in the bargaining unit ..." It is appropriate for "the arbitrator to decide just what the issue was that was submitted to it and argued by the parties." *Waverly Mineral Products Co. v. United Steelworkers of America,* 633 F.2d 682, 685 (5th Cir. 1980). Of course, if the arbitrator in his opinion stated the issue in terms far beyond his authority, this statement of the issue could not control. We find, however, that the arbitrator stated the issue within his interpretation of the scope of the contract. The parties, knowing the nature of the grievance, gave the arbitrator the authority to decide it. The company did not waive a claim of arbitrability but certainly seemed to accept the scope of the grievance as valid.

The company urges that the grievance was not arbitrable because the authority of the U.S. Army to perform work was not a matter covered by the collective bargaining agreement. The agreement includes a broad arbitration provision. It defines "grievance" as "any misunderstanding, controversy or dispute between the company and the union, or between the company and the employees over the interpretation or application of the terms of this agreement." Article IX of the agreement provides that "any matter that is not adjusted" may be arbitrated "upon written request."

■ When a labor contract contains an arbitration clause, "[a]n order to arbitrate the particular grievance should not be denied unless it may be said with positive assurance that the arbitration clause is not susceptible of an interpretation that covers the asserted dispute. Doubts should be resolved in favor of coverage." *Warrior & Gulf,* 363 U.S. at 582–83, 80 S.Ct. 1353, 4

L.Ed.2d at 1417–18, *quoted with approval* in *AT & T Technologies v. Comm. Workers of America,* —— U.S. ——, 106 S.Ct. 1415, 89 L.Ed.2d 648 (1986). The fact that the U.S. Army performed work customarily done by bargaining unit members can be viewed rationally as a potential violation of Article II § 4 of the contract.[2] We conclude in the next section of this opinion that the arbitrator's award drew its "essence" from the contract. We cannot say that the arbitration clause was not susceptible of an interpretation which covered this dispute.

■ In addition, no language in the contract can be said clearly to have excluded this grievance from the broad arbitration provision. "In the absence of any express provision excluding a particular grievance from arbitration ... only the most forceful evidence of a purpose to exclude the claim from arbitration can prevail...." *Warrior & Gulf,* 363 U.S. at 584–85, 80 S.Ct. at 1354, 4 L.Ed.2d at 1419. The company presented no evidence that this grievance was intended by the parties to be excluded from the arbitration provision. We agree with the district court that "it is settled beyond peradventure that this grievance was 'on its face' governed by the collective bargaining agreement."

*The "Essence" of the Agreement*

■ The company's second objection to the arbitrator's award is that it did not draw its "essence" from the bargaining agreement. In determining whether an award arises from the "essence" of a labor contract, the contract should be interpreted "expansively so as to uphold the award, rather than restrictively." *International Ass'n of Machinists v. Texas Steel Co.,* 538 F.2d 1116, 1121 (5th Cir.1976), *cert. denied* 429 U.S. 1095, 97 S.Ct. 1110, 51 L.Ed.2d 542 (1977). All that is necessary to pass muster is that it is "rationally inferable" that in "some logical way" the award was "derived from ... the contract." *Brother-*

---

**2.** The grievance itself stated that "the Union contends ... the agreement is being grossly violated."

hood of RR Train v. Central of Georgia Ry. Co., 415 F.2d 403, 412 (5th Cir.1969), cert. denied, 396 U.S. 1008, 90 S.Ct. 564, 24 L.Ed.2d 500 (1970). Even if this court disagrees with the arbitrator's award, we must uphold it unless it is so "palpably faulty that no judge ... could ever conceivably have made such a ruling ..." Safeway Stores v. American Bakery & Confectionary Workers, 390 F.2d 79, 82 (5th Cir. 1968).

■ The company contends first that the persons defined as "excluded" from the bargaining unit under Article I § 2 [3] of the agreement are meant to be the same people to whom Article II § 4—which outlaws work by "excluded" persons—applies. Because the U.S. Army is not listed as "excluded" from the bargaining unit under Art. I, § 2, the company concludes that Art. II, § 4 is inapplicable to work done by the Army.

The company's view is a possible interpretation of the agreement. Article I § 2, however, is not a definitional section for the entire contract. It is a more reasonable interpretation that Art. I § 2 is merely a provision defining bargaining unit lines, while Art. II § 4 is a totally separate provision dealing with subcontracting. The company's interpretation, if accepted, would mean that Article II § 4 did not limit subcontracting at all except to very limited number of defined employees. This conclusion would fly in the face of a main purpose of such clauses. These clauses are intended to prohibit or regulate the "subcontracting out" of work to independent contractors and their employees. Thus, the

arbitrator's award was a reasonable interpretation of Article II § 4. This Court has no right to reexamine the arbitrator's rational interpretation of that provision. Enterprise Wheel, 363 U.S. at 599, 80 S.Ct. at 1362, 4 L.Ed.2d at 1429.

The company argues second that Art. II § 4 of the contract states only that the company would not "permit" other entities to do union work. The company asserts that it did not "permit" any work to be done by the Army, and at most it failed to "prevent" the work from being done. This is merely a semantic distinction. It is obvious that a failure to prevent could potentially be viewed as tacit permission. In any event, the arbitrator found that the company did not protest the work done by the Corps, and "it is unknown whether or not the Corps ... would have proceeded with the subcontracting [if] faced with opposition from the Company." As we have already noted many times, this Court has no right to reexamine the arbitrator's findings on the merits. We conclude that the arbitrator's award drew its "essence" from the collective agreement.

The company makes much of the fact that it was the U.S. Government that performed the road work. It asserts that enforcement of the arbitration award is unfair because the company was powerless to interfere with U.S. governmental actions. We initially point out that this assertion is factually inadequate. As we have noted, the arbitrator found that the company failed to protest the work done by the

---

**3.** Art. I § 2 of the contract provides: The Unit certified by the National Labor Relations Board as Case No. 16–RC–1187, is as follows:

"INCLUDED: All employees in the Production Division, Inspection Division, Stores and Transportation Division and Maintenance Labor Department at the Lone Star Army Ammunition Plant.

"EXCLUDED: All electrical maintenance employees, all truck drivers and dispatchers, all carpenters and their apprentices, all pipe fitters, plumbers, welders, boiler house operators and air compressor operators and their apprentices, all garage employees, all machine shop employees, all painters and their apprentices, all office, clerical and timekeeping employees, all plant security personnel, all medical employees, all professional employees and all supervisors as defined in the Act. Also excluded are: all heavy duty mechanics, dragline operators, backhoe operators, tractor operators, and motor grader operators in Maintenance Division."

Corps, and it was possible that such a protest might have been effective.

In any event, the mere fact that the federal government was involved does not destroy the validity of the arbitrator's award. In *W.R. Grace Co. v. Local Union 759*, 461 U.S. 757, 103 S.Ct. 2177, 76 L.Ed.2d 298 (1983), an employer suspected of violations of Title VII of the Civil Rights Act of 1964 signed a conciliation agreement with the EEOC. The employer agreed to lay off employees in a manner which the government felt would compensate for past racial and sexual discrimination in hiring. The conciliation agreement, however, was directly contrary to the seniority provisions of the collective bargaining agreement with the union. The employer began layoffs pursuant to the government order, and the union filed a grievance complaining of a breach of the seniority provisions in the labor contract. The arbitrator found in favor of the union. The Supreme Court unanimously affirmed the arbitrator's award, reasoning that the employer did not have a right to breach the collective contract although the federal government agency had solicited its agreement to do so. *Id.* at 771, 103 S.Ct. at 2186, 76 L.Ed.2d at 310.

 It is not an adequate defense for the company in the present case simply to contend that it was powerless to prevent the U.S. Army from doing the work. Unless the contract between the company and the government authorized the government to insist that it had the sole right to do the work, the company still had to abide by the agreement it had negotiated with the union absent overriding public policy considerations.[4] The lesson of *W.R. Grace* is that an employer can be held liable for breach of a collective bargaining agreement even if actions of the government contributed in part to that breach.[5] Having freely negotiated

**4.** If the company had demonstrated that the government had the right to assign the work to the Army under the terms of the prime contract (between the company and the government), then a contrary arbitration award would be unenforceable. Article XVII of the collective bargaining agreement provided that the collective agreement was made with reference to and subject to the company's prime contract with the government. Thus, had it been demonstrated that under the prime contract the government had the right to assign the work exclusively to the Army, then the prime contract would override Article II § 4 of the bargaining agreement. The arbitrator's award in that case would probably not draw its essence from the collective bargaining agreement because such an award would ignore Article XVII of the agreement. Indeed, the arbitrator himself stated that Article II § 4 would have been "nullif[ied]" if the government had granted the Corps of Engineers "exclusive jurisdiction over road repair and maintenance ... in conformity with ... a provision of the Prime Contract."

This scenario, however, is merely hypothetical given the facts of the present case. The company failed to introduce the prime contract into evidence. The company urged that the roadwork at issue in this case was in excess of $100,000 and that exclusive jurisdiction to perform roadwork of that magnitude was vested by the federal government in the U.S. Army Corps of Engineers. That argument is directly contrary to specific findings of fact made by the arbitrator. The arbitrator found:

[T]he credible evidence is that the Company's Prime Contract with the Government includes road repair and maintenance within the area of the Lone Star Army Ammunition Plant and contains nothing to restrict the Company from performing roadwork costing in excess of $100,000. The Company's claim that it has no jurisdiction over the roadwork performed by the Corps of Engineers is not persuasive and is not compatible with the credible evidence.

A review of the record reveals that these were not irrational conclusions on the part of the arbitrator. This Court has no authority to re-examine those findings of fact. *Int'l U. of Electrical Workers v. Markle Mfg. Co.*, 582 F.2d 9, 10 (5th Cir.1978); *see also Enterprise Wheel*, 363 U.S. at 596, 80 S.Ct. at 1360, 4 L.Ed.2d at 1427.

**5.** The general argument that the company could not control the actions of the U.S. Government may enter into the calculus of the correctness of the award. But this contention, in the absence of reference to language in the bargaining agreement, does not contradict the fact that the award was based upon a rational reading of the contract. Because this Court does not have authority to review the merits of the arbitration award, we must limit our review to whether the award drew its "essence" from the contract. *See Enterprise Wheel*, 363 U.S. at 599, 80 S.Ct. at 1362, 4 L.Ed.2d at 1429 (courts "have no business overruling" arbitrator "because their interpretation of the contract is different from his").

a collective agreement, and having been found by an arbitrator to have violated that agreement, the company may not be heard to complain that it was powerless in the present situation.[6]

The company urges that upholding the arbitrator's award in this case leads to an absurd result because its employees must be paid for work neither performed nor subcontracted. The broad rule of deference afforded to industrial arbitration, however, "justifies sustaining arbitration awards which at first blush may look rather unreasonable." R. Gorman, *Basic Text on Labor Law*, p. 585 (1976). For example, in *Safeway Stores v. American Bakery*, 390 F.2d at 79, the company departed from its practice of ending the pay week on Wednesday and issuing checks the next day, and instead ended the pay week on Friday and issued checks the following Tuesday. The first paycheck under the new system covered only Thursday and Friday, resulting in sixteen hours' pay, and the union filed a grievance charging a violation of a contract provision guaranteeing forty hours' pay each week. The arbitrator sustained the grievance and ordered the employer to pay the employees for an additional twenty-four hours of work even though no work had been performed. This Court upheld the arbitrator's award because it was based on the terms of the contract. We explained:

> If such a result is unpalatable to an employer or his law-trained counsel who feels he had a hands-down certianty in a law court, it must be remembered that just such a likelihood is the by-product of a consensually adopted contract arrangement.... The arbiter was chosen to be

the Judge. That Judge has spoken. There it ends.

*Id.* at 83.

## II. REMAND TO ARBITRATOR TO DETERMINE REMEDY

The arbitrator, after finding the company liable, did not issue a monetary award, but rather ordered a further hearing on damages. In the meantime, the district court heard this enforcement proceeding. The district court then remanded to the arbitrator to determine an appropriate award. In so doing, the district court noted that the 1981–84 collective bargaining agreement contained substantially different terms from the 78–81 agreement under which the present grievance was filed. The court directed the arbitrator to determine whether the terms of the new agreement might act as a cut-off of the union's remedy. The company asserts that the district court erred in asking the arbitrator to make this determination. The company urges that the new agreement is a totally integrated document, and thus any grievance filed under the old contract would have no applicability under the new.

■ The arbitrator must devise a remedy in this case. In so doing, the arbitrator must be given broad discretion. *Enterprise Wheel*, 363 U.S. at 597, 80 S.Ct. at 1361, 4 L.Ed.2d at 1428. The district court merely pointed out to the arbitrator that there is a later agreement and also that it has different terms. These are facts that the arbitrator may properly consider in fashioning his remedy. *See Oil, Chemical & Atomic Workers v. Rohm*, 677 F.2d 492, 495 (5th Cir.1982) (remand to arbitrator appropriate "when issues submitted were not fully resolved"). Of course, the company will be able to attack the remedy later if

---

**6.** We do not mean to suggest that an arbitration award which conflicts with important federal governmental policy objectives is enforceable. It is well settled that "a court may not enforce a collective bargaining agreement that is contrary to public policy." *W.R. Grace*, 461 U.S. at 766, 103 S.Ct. at 2183, 76 L.Ed.2d at 307. In the present case, the company makes no claim that enforcement of this award would violate public policy. We note that an arbitration award

based on a violation of a bargaining agreement does not necessarily violate public policy merely because it is opposed to a governmental directive. *Id.* at 771, 103 S.Ct. at 2186, 76 L.Ed.2d at 310; *see also* C. Haynes, *The Clash Between Conciliation and Collective Bargaining Agreements: What is an Employer to Do?* (Feb. 19, 1984) (on file with University of Texas Law Review).

it is not based upon the "essence" of applicable bargaining agreements. We affirm the district court's upholding of the arbitration award and the remand to the arbitrator to construct an appropriate remedy to enforce it.

AFFIRMED.