**TRINITY INDUSTRIES, INC., Plaintiff,**

v.

**UNITED STEELWORKERS OF AMERICA, AFL–CIO–CLC, Defendant.**

No. 3:94–CV–2272–X.

United States District Court,
N.D. Texas,
Dallas Division.

July 20, 1995.

Richard F. Kane, Kevin V. Parsons, Blakeney & Alexander, Charlotte, NC, of counsel, McGlinchey Stafford Lang, A Law Corp., Dallas, TX, for plaintiff/counter-defendant, Trinity Industries, Inc.

Rudolph L. Milasich, Jr., Asst. General Counsel, United Steelworkers of America, Pittsburgh, PA, Bruce Fickman, Houston, TX, for defendant United Steelworkers of America AFL–CIO–CLC.

## MEMORANDUM OPINION AND ORDER

KENDALL, District Judge.

Before the Court are: Plaintiff's Motion for Summary Judgment and Brief in Support, filed March 14, 1995; Defendant's Response and Motion for Summary Judgment and Brief in Support, filed March 27, 1995; and Plaintiff's Response and Reply, filed April 17, 1995. After carefully considering the motions, briefs, supporting evidentiary submissions, and applicable law, the Court determines that no issues of material fact exist with respect to the issues raised in the motions for summary judgment. Plaintiff's Motion for Summary Judgment is DENIED, and Defendant's Motion for Summary Judgment is GRANTED, as the Court enforces the arbitrator's award at issue.

## BACKGROUND

In this case, Plaintiff Trinity Industries, Inc. ("Trinity") asks the Court to vacate an arbitrator's decision regarding Trinity's termination of two employees who are members of Defendant United Steelworkers of America, AFL–CIO–CLC ("the Union"). The Union is the certified collective bargaining representative for Trinity's production and maintenance employees at its Bessemer, Alabama plant, where Trinity manufactures railroad cars. On June 2, 1993 Trinity and the Union entered into a Collective Bargaining Agreement ("the Agreement"). The Agreement provides for the resolution of disputes through a grievance procedure which culminates in mandatory arbitration.

In February 1994 Sepp Etterer, the Trinity Plant Safety/Environmental Manager, was informed of a confidential tip by an hourly employee that three employees were smoking marijuana in a vacant building on company property during their lunch breaks. On February 16, 1994, Etterer entered the vacant building, detected the smell of marijuana smoke, and found welders David Englebert and Thomas Howell sitting in a corner of the building. Etterer told Englebert and Howell to report to the plant nurse after lunch for a urinalysis. According to Trinity's Alcohol and Drug Policy, employees may be required to take a drug test at the company's discretion.

Englebert and Howell reported to the plant nurse, but refused to submit to the drug test. Personnel Manager Wayne Hornbuckle told them that their refusal to take the test would result in their discharge. This was also confirmed for them by union Grievance Committee Chairman Willie Dan-

iels. They still refused to submit to the drug test and were discharged that day.

Englebert and Howell filed grievances on February 22, 1994 protesting their discharges. The grievances were processed through the steps of the grievance procedure and were appealed to arbitration. Trinity and the Union selected arbitrator Donald P. Crane, who conducted an arbitration hearing in Bessemer on July 7, 1994. The issue presented to the arbitrator was phrased as follows: Were the grievants David Englebert and Thomas Howell discharged for proper cause? If not, what shall the remedy be?

Both sides presented testimony and written evidence at the hearing and also submitted post-hearing briefing to the arbitrator. On September 5, 1994, arbitrator Crane issued his decision and award. Crane held that Englebert and Howell were not discharged for proper cause, and that they were to be reinstated to their jobs with full seniority, but that their discharged time would be considered a disciplinary suspension and they were not entitled to back pay. On October 25, 1994, Trinity filed its Complaint to Vacate Arbitrator's Award. Trinity and the Union have filed cross-motions for summary judgment now before the Court.

## SUMMARY JUDGMENT

Summary judgment is proper when the pleadings and evidence on file show that no genuine issue exists as to any material fact and that the moving party is entitled to judgment or partial judgment as a matter of law. Fed.R.Civ.P. 56(c); *Slaughter v. Southern Talc Co.,* 949 F.2d 167, 170 (5th Cir. 1991). A dispute about a material fact is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986). The substantive law will identify which facts are material. *Id.* at 248, 106 S.Ct. at 2510. The nonmovant is not required to respond to the motion until the movant properly supports his motion with competent evidence. *Russ v. International Paper Co.,* 943 F.2d 589, 591 (5th Cir.1991), *cert. denied,* 503 U.S. 987, 112 S.Ct. 1675, 118 L.Ed.2d 393 (1992). However-

er, once the movant has carried his burden of proof, the nonmovant may not sit idly by and wait for trial. *Page v. DeLaune,* 837 F.2d 233, 239 (5th Cir.1988).

When a movant carries his initial burden, the burden then shifts to the nonmovant to show that the entry of summary judgment is inappropriate. *Duckett v. City of Cedar Park,* 950 F.2d 272, 276 (5th Cir.1992). Although the nonmovant may satisfy this burden by tendering depositions, affidavits, and other competent evidence, "[m]ere conclusory allegations are not competent summary judgment evidence, and they are therefore insufficient to defeat or support a motion for summary judgment." *Topalian v. Ehrman,* 954 F.2d 1125, 1131 (5th Cir.1992), *cert. denied,* —— U.S. ——, 113 S.Ct. 82, 121 L.Ed.2d 46 (1992). In short, "the adverse party's response ... must set forth specific facts showing that there is a genuine issue for trial." Fed.R.Civ.P. 56(e). Merely colorable evidence or evidence not significantly probative, however, will not defeat a properly supported summary judgment. *Anderson,* 477 U.S. at 249–50, 106 S.Ct. at 2510–11. The existence of a mere scintilla of evidence will not suffice. *Id.* at 252, 106 S.Ct. at 2512. When the nonmoving party fails to make the requisite showing and the moving party has met its summary judgment burden, the movant is entitled to summary judgment. Fed. R.Civ.P. 56(c); *Campbell v. Sonat Offshore Drilling,* 979 F.2d 1115, 1119 (5th Cir.1992).

## DISCUSSION

Thirty-five years ago, the Supreme Court severely limited a court's review of an arbitrator's decision in three cases now referred to as the *Steelworkers'* Trilogy: *United Steelworkers of Am. v. American Mfg. Co.,* 363 U.S. 564, 80 S.Ct. 1343, 4 L.Ed.2d 1403 (1960); *United Steelworkers of Am. v. Warrior & Gulf Navigation Co.,* 363 U.S. 574, 80 S.Ct. 1347, 4 L.Ed.2d 1409 (1960); and *United Steelworkers of Am. v. Enterprise Wheel & Car Corp.,* 363 U.S. 593, 80 S.Ct. 1358, 4 L.Ed.2d 1424 (1960). When a company and a union have reached a collective bargaining agreement providing for arbitration of disputes,

the question of interpretation of the collective bargaining agreement is a question for the arbitrator. It is the arbitrator's construction which was bargained for; and so far as the arbitrator's decision concerns construction of the contract, the courts have no business overruling him because their interpretation of the contract is different from his.

*Enterprise Wheel & Car* at 599, 80 S.Ct. at 1362. As long as the arbitrator's award "draws its essence from the collective bargaining agreement" and does not merely "dispense his own brand of industrial justice," the award is legitimate and may not be overturned by the courts. *Id.* at 597, 80 S.Ct. at 1361.

In subsequent decisions, the Supreme Court has reaffirmed the principle that federal courts may not second-guess an arbitrator's interpretation of a collective bargaining agreement, but has also cautioned that courts may not enforce a collective bargaining agreement that is contrary to public policy. *W.R. Grace and Co. v. Local Union 759,* 461 U.S. 757, 765–66, 103 S.Ct. 2177, 2183, 76 L.Ed.2d 298 (1983). Such public policy must be well-defined and dominant, and is to be ascertained "by reference to the laws and legal precedents and not from general considerations of supposed public interests." *Id., quoting Muschany v. United States,* 324 U.S. 49, 66, 65 S.Ct. 442, 451, 89 L.Ed. 744 (1945). The public policy violation must be clearly shown for a court to refuse to enforce the arbitrator's award. *United Paperworkers Int'l Union, AFL–CIO v. Misco, Inc.,* 484 U.S. 29, 43–44, 108 S.Ct. 364, 373–74, 98 L.Ed.2d 286 (1987).

*The Arbitrator's Award*

In a nine-page decision, arbitrator Crane noted that pursuant to the Agreement Trinity had the right to promulgate reasonable policies and rules, and that the Union had not challenged the company's Alcohol and Drug Policy as being unreasonable. This policy provides that Trinity may "at its discretion" require an employee to take a drug or alcohol test, and the arbitrator found that Trinity had been judicious about requiring drug or alcohol tests. Although supervisor

Etterer did not feel that Englebert and Howell were necessarily under the influence of marijuana, he required them to take a drug test because he had reasonable suspicion that they were smoking marijuana. The arbitrator believed Etterer's suspicions to be well-founded and reasonable, and found that Etterer had just cause to request Englebert and Howell to take a drug test.

Turning to the grievants' actions, although they felt they were standing on principle, the arbitrator considered Englebert's and Howell's refusal to take the drug test to be self help in contradiction of the established industry practice of "obey now, grieve later." Under Trinity's policy, testing positive for drugs would result in the employee's referral to an Employee Assistance Program, while refusal to take a drug test would result in the employee's discharge. Englebert and Howell were aware of this because they were repeatedly cautioned by the company personnel manager as well as a union representative that this refusal would result in discharge.

The arbitrator agreed that Englebert's and Howell's refusal to take the drug test justified severe discipline, but he did not find proper cause for their discharge "because a fundamental right of the grievants to due process was violated." Specifically, they were not permitted to face their accuser, Sepp Etterer, nor were they told the circumstances of the probable cause that led to his requirement that they take a drug test. The arbitrator concluded that due process compels the company to provide accused employees an opportunity to defend themselves *before* a decision to discharge is made:

> Without knowledge of the charge, e.g., the evidence that led Mr. Etterer to order the drug test, they had no opportunity to consider their options rationally. Armed with the evidence, they might have chosen to take the test. Had they been provided this information and then refused, I would not have hesitated to uphold the Company's action.

Arbitrator's Decision at 8.

Finding that Englebert and Howell had not been discharged for proper cause, the arbitrator determined that as a remedy Trin-

ity must reinstate them to their former jobs with full seniority. They would not, however, be·entitled to back pay. Their time in a discharged. status (more than six months) would be considered a disciplinary suspension for purposes of calculating benefits.

*Trinity's Challenge to the Award*

Trinity asks this Court to vacate the arbitrator's award, contending that the award fails to draw its essence from the Agreement and violates the public policy favoring a drug-free workplace. First, Trinity asserts that the due process requirements imposed upon it by the arbitrator are nowhere to be found in the Agreement, and amount to a rewriting of the Agreement to comport with the arbitrator's own brand of industrial justice so that his decision should not be enforced. Trinity claims that the arbitrator departed from the plain language of the Agreement to achieve a desired result by replacing the Agreement's standards for "proper cause" to terminate employees with his own preference for certain fundamental rights known only to him.

Trinity also challenges the arbitrator's decision as violative of public policy by crippling its lawful efforts to rid its workplace of illegal drugs and by mandating continued employment of persons reasonably believed to be illegal drug users in dangerous positions. As Trinity is a federal contractor subject.to the Drug Free Workplace Act, it must certify to the contracting agency that it provides a drug-free workplace, and its drug testing policy assists the company in complying with the Act. Trinity maintains that the arbitrator's decision undermines its drug testing policy by forcing it to reveal information from confidential sources and by condoning refusal to submit to testing, and that employees who believe that they can avoid detection will be more likely to use illegal drugs.

The Union counters that the arbitrator's award is rationally based upon the proper cause for discharge provision of the Agreement and that the award imposing a more than six month disciplinary suspension of Englebert and Howell for their refusal to take a drug test does not violate public policy. The issue submitted to the arbitrator

was whether Englebert and Howell were discharged for "proper cause," and if not, what the remedy shall be. As "proper cause" is not defined in the Agreement, the arbitrator drew upon well-settled arbitral law to find that proper cause for discharge was lacking because Englebert and Howell were denied due process, a conclusion reached previously by arbitrators in similar cases.

The Union contends that the arbitrator's award does not violate public policy because there is no public policy which requires mandatory drug testing or which requires that any person who refuses to take a drug test must suffer termination of employment. Trinity never raised this public policy issue to the arbitrator, but introduced a public policy argument only after the arbitrator determined that Englebert and Howell must be reinstated. The Union also declares that the Drug Free Workplace Act does not require companies to engage in drug testing of employees. Finally, the Union asserts that these employees, who are welders in a facility which produces railroad cars, are not in the kind of dangerous, safety-sensitive position as in a case in which the Fifth Circuit has vacated an award reinstating a worker in a petrochemical plant.

*The Arbitrator's Award Must be Enforced*

■ The Supreme Court mandates that an arbitrator's award must be enforced if it "draws its essence from the collective bargaining agreement." *Enterprise Wheel & Car* at 597, 80 S.Ct. at 1361. In determining whether the award arises from the essence of a collective bargaining agreement, the agreement should be interpreted expansively so as to uphold the award, rather than restrictively. *International Chemical Workers Union v. Day & Zimmermann, Inc.*, 791 F.2d 366, 369 (5th Cir.1986). An award "draws its essence" from the agreement so long as it is "rationally inferable" in "some logical way" from the agreement. *Id.; Folger Coffee Co. v. International Union–UAW, Local Union No. 1805*, 905 F.2d 108, 110 (5th Cir.1990).

■ A court may not review the merits of the award or attempt itself to interpret the collective bargaining agreement. *International Union of Electrical, Radio and Ma-*

*chine Workers, AFL–CIO–CLC v. Ingram Mfg. Co.,* 715 F.2d 886, 892 (5th Cir.1983), *cert. denied,* 466 U.S. 928, 104 S.Ct. 1711, 80 L.Ed.2d 184 (1984). Even if the court disagrees with the arbitrator's award, the award must be upheld unless it is so "palpably faulty that no judge could ever conceivably have made such a ruling." *Day & Zimmermann* at 370, *quoting Safeway Stores v. American Bakery & Confectionery Workers,* 390 F.2d 79, 82 (5th Cir.1968). If the arbitrator is even arguably construing or applying the contract and acting within the scope of his authority, a court may not overturn his decision even if the court is convinced he committed serious error. *Misco* at 38, 108 S.Ct. at 371.

 When the arbitrator's decision and award is reviewed carefully, it is clear that this Court must enforce the award. It is important to understand what the decision did *not* do as well as what it actually did. The arbitrator did *not* strike down Trinity's Alcohol and Drug Policy, but instead found it reasonable. The arbitrator agreed that the company is judicious about requiring drug or alcohol tests. The arbitrator also agreed that Etterer's suspicions that Englebert and Howell were smoking marijuana in the plant were well founded, and that he had just cause to request them to take a drug test. Had the company given them more information to make a decision about whether or not to submit to testing, the arbitrator agreed that Trinity had every right to discharge Englebert and Howell for refusing to take a drug test.

The arbitrator's and Trinity's views of the situation only diverge on one point: what an accused employee must be told when ordered by the company to take a drug test. Trinity's Alcohol and Drug Policy provides that an employee may be required at the company's discretion to take a drug test, for example:

> If, in the opinion of the employee's supervisor, an employee appears to be "under the influence" of a substance that is affecting the employee's safety or job performance or that of another employee, the supervisor shall request that the employee submit to an alcohol and drug test immediately.

Drug and Alcohol Policy, quoted in the Arbitrator's Decision at 3. Etterer approached Englebert and Howell in the vacant building and told them to report to the nurse for a drug test. Etterer did not tell them that he believed them to be under the influence of marijuana, or that he detected the odor of marijuana smoke, or that someone else had seen them smoking marijuana at the plant. The arbitrator interpreted the Agreement (which incorporates Trinity's Alcohol and Drug Policy) to require an employee be informed of the evidence that has led a supervisor to order a drug test. Finding that the arbitrator's interpretation "draws its essence from the collective bargaining agreement," this Court must enforce the arbitrator's award, for "so far as the arbitrator's decision concerns construction of the contract, the courts have no business overruling him because their interpretation of the contract is different from his." *Enterprise Wheel & Car* at 599, 80 S.Ct. at 1362.

Although the Court can locate no Fifth Circuit case precisely on point, the Eighth and Ninth Circuits have upheld an arbitrator's award requiring reinstatement of an employee when the arbitrator found due process implications in a discharge for proper cause. In *Chauffeurs, Teamsters and Helpers Local Union No. 878 v. Coca–Cola Bottling Co.,* 613 F.2d 716 (8th Cir.), *cert. denied,* 446 U.S. 988, 100 S.Ct. 2975, 64 L.Ed.2d 847 (1980), the company attacked as "an unauthorized attempt to inflict his own brand of industrial justice" the arbitrator's decision that a lack of procedural fairness caused an employee's dismissal to fall short of the just cause standard. The Eighth Circuit determined that, as the collective bargaining agreement was silent on what procedural requirements attach to the process of a dismissal for just cause, the arbitrator's holding that the term has significant procedural implications was not beyond the scope of his authority and could not be set aside by the court. *Id.* at 721.

In another case analogous to the present one, an arbitrator's award which considered minimum procedural due process to be a component of discharge for good cause was enforced by the Ninth Circuit. *Federated*

*Department Stores v. United Food & Commercial Workers Union, Local 1442,* 901 F.2d 1494 (9th Cir.1990). The court cited the *Steelworkers'* Trilogy:

> The labor arbitrator's source of law is not confined to the express provisions of the contract, as the industrial common law—the practices of the industry and the shop—is equally a part of the collective bargaining agreement although not expressed in it.

*Warrior & Gulf Navigation Co.* at 581–82, 80 S.Ct. at 1352. The court concluded that the issue of whether there was just cause to discharge the employee was explicitly before the arbitrator and he justifiably viewed due process as an element of just cause. *Federated* at 1498.

Trinity relies on several Fifth Circuit cases which are factually or legally distinguishable from the present case. In *HMC Management Corp. v. Carpenters Dist. Council of New Orleans and Vicinity,* 750 F.2d 1302 (5th Cir.1985), the court remanded an arbitrator's decision reinstating an employee that was determined not to be based on a lack of just cause, as the arbitrator's decision in the present case was based. In *Container Products, Inc. v. United Steelworkers of Am.,* 873 F.2d 818 (5th Cir.1989), in *Delta Queen Steamboat Co. v. District 2 Marine Engineers Beneficial Ass'n, Associated Maritime Officers, AFL–CIO,* 889 F.2d 599 (5th Cir. 1989), *cert. denied,* 498 U.S. 853, 111 S.Ct. 148, 112 L.Ed.2d 114 (1990), and also in *E.I. DuPont de Nemours and Co. v. Local 900, International Chemical Workers Union, AFL–CIO,* 968 F.2d 456 (5th Cir.1992), the Fifth Circuit held that an arbitrator who found just cause for dismissal yet fashioned an alternate remedy exceeded the scope of his authority so that the arbitrator's award must be vacated.

The Fifth Circuit case relied on by Trinity in challenging the arbitrator's award as violative of public policy, *Gulf Coast Indus. Workers Union v. Exxon Co., U.S.A.,* 991 F.2d 244 (5th Cir.1993), is also distinguishable. In that case, the discharged Exxon employee had participated in an alcohol rehabilitation program and then signed an after-care agreement acknowledging that he must undergo random alcohol and drug testing and that he would notify a supervisor in case of relapse. The employee subsequently tested positive for cocaine, was discharged, and then reinstated by the arbitrator, who believed he seemed "a good bet for successful rehabilitation." *Id.* at 248. The Fifth Circuit vacated the arbitrator's award as violative of public policy:

> we hold that it offends public policy for Woods, an employee who occupies a safety-sensitive position, to retain his job upon testing positive for cocaine while on the job and after having breached his company's drug abuse policy on two occasions—first when he broke his pledge of abstinence, and second when he failed to disclose his relapse.

*Gulf Coast* at 250. The court noted that the petrochemical plant worker's duties involved the handling of high-pressure and high-temperature liquids and gases, a position having "the capacity to place thousands of people, as well as the surrounding environment, at risk," so that reinstatement and further rehabilitation "is on its face extremely risky under these unusual and uncommon circumstances." *Id.* at 252, 254. *Gulf Coast* is significantly different factually from the present case, and there is no indication that the due process concerns at issue here arose in *Gulf Coast.*

It is beyond dispute that American public policy seeks to eradicate illicit drugs from the workplace. But the arbitrator's decision in this case is not irreconcilable with that public policy. The arbitrator's decision does not hinder Trinity from maintaining a drug-free workplace.[1] The company is free to continue to require drug testing and to discharge an employee who refuses. There is

---

1. Although Trinity apparently believes that the arbitrator's decision "requires Trinity to disclose confidential informants before testing employees," Memorandum in Support of Motion for Summary Judgment at 17–18, this interpretation misreads the decision. The arbitrator considered supervisor Sepp Etterer to be the grievants' accuser, not the confidential informant, and explained that they should have been permitted to learn from Etterer the circumstances behind his order to be tested.

simply no "well-defined and dominant" public policy supporting an employer's refusal to provide knowledge of the charge or evidence against an employee who is ordered to submit to a drug test.

Finally, having found that the arbitrator's decision that Englebert and Howell were not discharged for just cause "draws its essence" from the collective bargaining agreement, the Court may not overturn the arbitrator's chosen remedy of reinstatement with a disciplinary suspension. The issue of an appropriate remedy was explicitly presented to the arbitrator. As the Supreme Court has declared, "where it is contemplated that the arbitrator will determine remedies for contract violations that he finds, courts have no authority to disagree with his honest judgment in that respect." *Misco* at 38, 108 S.Ct. at 371.

## CONCLUSION

For the reasons discussed above, Plaintiff's Motion for Summary Judgment is DENIED and the Defendant's Motion for Summary Judgment is GRANTED.

SO ORDERED.