**MANVILLE FOREST PRODUCTS COR-PORATION, Plaintiff-Appellant,**

v.

**UNITED PAPERWORKERS INTERNA-TIONAL UNION, AFL–CIO and United Paperworkers International Union, AFL–CIO, Local 364, Defendants-Appellees.**

No. 86–4959.

United States Court of Appeals, Fifth Circuit.

Oct. 28, 1987.

Peyton Lacy, Jr., Lange, Simpson, Robinson & Somerville, Birmingham, Ala., Richard A. Gear, Shreveport, La., for plaintiff-appellant.

Robert H. Urann, Gardner, Robein & Healey, Metairie, La., Melinda Branscomb, United Paperworkers Intern. Union, Legal Dept., Nashville, Tenn., for defendants-appellees.

Before GEE, JOHNSON, and HILL,[*] Circuit Judges.

JOHNSON, Circuit Judge:

The Manville Forest Products Corporation (Manville) appeals the district court's grant of summary judgment enforcing an arbitration award in favor of the United Paperworkers International Union. Because we agree with the district court that the award was based on the collective bargaining agreement and did not violate public policy, we affirm.

## I. BACKGROUND

Manville owns a paper mill in West Monroe, Louisiana. The United Paperworkers International Union and Manville have signed a series of collective bargaining agreements going back to the 1940s. Un-

der these agreements, a job classification could be changed or eliminated only by mutual agreement between Manville and the Union. At the end of each three-year contract term, the Union or Manville could propose modifications to the existing agreement. The parties negotiated each modification. When negotiations were complete, the parties sent the printer a copy of the previous contract and a list of approved changes. If no change was approved to a particular provision, that provision was retained in the new contract.

The West Monroe mill contained seven paper machines. Until 1982, each machine had assigned to it one "broke hustler" whose job was to gather nonsaleable trash paper from the machine and take it away for recycling. The 1980–1983 collective bargaining agreement provided for seven broke hustler positions, one for each machine. In early 1982, Manville experienced difficulties and shut down machines 1 to 5, putting employees on temporary layoff.

In August 1982, Manville restarted machine No. 5. The company negotiated with the Union to eliminate several positions, including the broke hustler on machine No. 5. Soon after the Union and Manville began negotiations for the 1983–1986 contract. During negotiations, Manville representatives told the Union that no plans existed to restart machines 1, 2, and 4, and that there was no need to include provisions related to those machines. As a consequence, the contract sent to the printer was silent on the staffing of those machines.

In 1984, Manville decided to restart machine No. 1. The company and the Union negotiated the machine's staffing, but failed to reach an agreement. In June 1984, Manville restarted the machine without a broke hustler. The Union filed a grievance.

In accordance with the 1983–1986 contract's arbitration clause, the parties submitted their dispute to binding arbitration. The arbitrator found that, considering past practices and the negotiating history of the 1983 contract, the omission of references to

* Judge Hill concurred in the above opinion before his death on October 19, 1987.

the machine No. 1 broke hustler did not suffice to eliminate that position. Concluding that the broke hustler position was still mandated by the agreement, the arbitrator ordered Manville to fill it. Manville brought suit in the district court to vacate the arbitration award, and the Union counterclaimed for enforcement. The district court gave summary judgment for the Union, ordering enforcement.

## II. DISCUSSION

### A. *Standard of Review*

██ Judicial review of arbitration awards is severely limited. A court may not review the merits of an award—it must accept the facts found by the arbitrator and the arbitrator's interpretation of the contract and applicable law. *W.R. Grace and Co. v. Local Union 759*, 461 U.S. 757, 764, 103 S.Ct. 2177, 2182, 76 L.Ed.2d 298 (1983); *United Steelworkers of America v. Enterprise Wheel and Car Corp.*, 363 U.S. 593, 596–98, 80 S.Ct. 1358, 1360–61, 4 L.Ed.2d 1424 (1960); *Local Union 59, I.B. E.W. v. Green Corp.*, 725 F.2d 264, 268 (5th Cir.), *cert. denied*, 469 U.S. 833, 105 S.Ct. 124, 83 L.Ed.2d 66 (1984). The parties bargained for an arbitrator who would determine facts and interpret the contract; there is no injustice in holding them to this bargain. *Enterprise Wheel and Car Corp.*, 363 U.S. at 599, 80 S.Ct. at 1362. Moreover, respect for the finality of arbitration awards furthers the public policy of encouraging management and labor to settle their disputes through arbitration rather than through strikes and violence. *United Steelworkers of America v. Warrior & Gulf Navigation Co.*, 363 U.S. 574, 578, 80 S.Ct. 1347, 1351, 4 L.Ed.2d 1409 (1960).

The courts have, however, placed some limits on arbitrators' power. An arbitration award will not be enforced if it stems from fraud or partiality; if it concerns a matter not subject to arbitration under the contract; if it does not "dra[w] its essence" from the contract; or if it violates public policy. *W.R. Grace*, 461 U.S. at 764–65, 103 S.Ct. at 2182–83; *Enterprise Wheel & Car Corp.*, 363 U.S. at 597, 80 S.Ct. at

1361; *Green Corp.*, 725 F.2d at 268. Even while conducting these inquiries, the courts are bound to interpret the arbitrator's award and the contract broadly so as to uphold the award. *Enterprise Wheel & Car Corp.*, 363 U.S. at 598, 80 S.Ct. at 1361 ("A mere ambiguity in the opinion accompanying an award, which permits the inference that the arbitrator may have exceeded his authority, is not a reason for refusing to enforce the award"); *International Ass'n of Machinists v. Texas Steel Co.*, 538 F.2d 1116, 1121 (5th Cir.1976), *cert. denied*, 429 U.S. 1095, 97 S.Ct. 1110, 51 L.Ed.2d 542 (1977) ("The 'essence' standard is to be interpreted expansively, so as to uphold the award, rather than restrictively"). An award draws its "essence" from the collective bargaining agreement so long as it is "'rationally inferable'" in "'some logical way'" from that agreement. *International Chemical Workers Union v. Day & Zimmermann, Inc.*, 791 F.2d 366, 369 (5th Cir.), *cert. denied*, —— U.S. ——, 107 S.Ct. 274, 93 L.Ed.2d 250 (1986), citing *Brotherhood of R.R. Trainmen v. Central of Georgia Ry. Co.*, 415 F.2d 403, 412 (5th Cir.1969), *cert. denied*, 396 U.S. 1008, 90 S.Ct. 564, 24 L.Ed.2d 500 (1970).

### B. *The "Essence" of the Collective Bargaining Agreement*

Manville does not allege fraud or partiality or contest the arbitrability of disputes over the broke hustler position. Manville does, however, argue vehemently that, because the 1983 contract makes no reference to a broke hustler for machine No. 1, the arbitrator could not have based his decision that such a position existed on the "essence" of the agreement. Instead, Manville claims that the arbitrator attempted to dispense "his own brand of industrial justice," a practice condemned by the Supreme Court. *Enterprise Wheel & Car Corp.*, 363 U.S. at 597, 80 S.Ct. at 1361. Manville points particularly to passages in the arbitrator's opinion in which the arbitrator narrates the 1982 to 1983 negotiations, apparently praising the Union's forbearance and condemning Manville for representing that machines 1 to 4 would remain idle.

One of the rare cases in which this Court overturned an arbitration award for failure to "draw its essence" from the contract is *HMC Management Corp. v. Carpenters District Council,* 750 F.2d 1302 (5th Cir. 1985). In that case, management had discharged two workers for the same cause and then rehired one. *Id.* at 1303. The arbitrator did not find fault with the discharge, but ordered reinstatement of the other worker, finding no justification for the disparate treatment. This Court found nothing in the agreement obliging management to treat workers the same way in such a situation. Concluding that the arbitrator had relied only on his sense of "industrial justice," the Court approved vacating the award. *Id.* at 1304–05.

The arbitration award in the instant case, like the award in *HMC Management,* does contain passages apparently disapproving of management actions. However, unlike the arbitrator in *HMC Management,* the arbitrator here supported his decision with specific fact findings on past dealings between the parties and their intent as revealed by their negotiating history. Specifically, the arbitrator concluded that a broke hustler position for machine No. 1 was part of the 1983 agreement because: (1) under the parties' past practice, a position continued to exist until abolished by mutual agreement; (2) there was no mutual agreement to abolish the machine No. 1 broke hustler position; and therefore (3) that broke hustler position was still in existence and the company was obligated either to fill it or to negotiate for its abolition. Step number (2) in the arbitrator's reasoning depends, in turn, on the arbitrator's uncontested factual finding that failure to mention the machine No. 1 broke hustler position in the written contract was due to the misapprehension that machine No. 1 would remain out of service, not to mutual agreement concerning machine No. 1.

This Court must accept the factual findings of the arbitrator. *See, e.g., Enterprise Wheel & Car Corp.,* 363 U.S. at 596–99, 80 S.Ct. at 1360–62. We cannot see, and Manville does not point to, any obvious flaws in the arbitrator's reasoning from these facts. The only remaining question is whether the arbitrator correctly considered past practices and negotiating history.

■■■ Beginning with the 1960 "Steelworkers Trilogy," which forms the foundation of labor arbitration law, the Supreme Court emphasized that an arbitrator may look beyond the written contract when interpreting a collective bargaining agreement:

> The collective bargaining agreement. ... is more than a contract; it is a generalized code to govern a myriad of cases which the draftsmen cannot wholly anticipate. ... It calls into being a new common law—the common law of a particular industry or of a particular plant. ... Gaps may be left to be filled in by reference to the practices of the particular industry and of the various shops covered by the agreement. ... The labor arbitrator's source of law is not confined to the express provisions of the contract, as the industrial common law—the practices of the industry and the shop—is equally a part of the collective bargaining agreement although not expressed in it.

*Warrior & Gulf Navigation Co.,* 363 U.S. at 578–82, 80 S.Ct. at 1351–52. Following the lead of the Supreme Court, this Circuit and others have refused to apply contract-law concepts, such as the parol evidence rule, to collective bargaining agreements. *Local 1445, United Food & Commercial Workers Int'l Union v. Stop & Shop Cos.,* 776 F.2d 19, 22 (1st Cir.1985); *Green Corp.,* 725 F.2d at 268. The arbitrator may determine that the written contract is ambiguous and then turn to extrinsic evidence. *Boise Cascade v. United Steelworkers of America,* 588 F.2d 127, 128 (5th Cir.), *cert. denied,* 444 U.S. 830, 100 S.Ct. 57, 62 L.Ed.2d 38 (1979). Further, the arbitrator may look outside the written contract to past practice when the contract is silent on a question. *Brotherhood of R.R. Trainmen v. Central of Georgia Ry. Co.,* 415 F.2d 403, 416 (5th Cir.1969), *cert. denied,* 396 U.S. 1008, 90 S.Ct. 564, 24 L.Ed.2d 500 (1970); *Lodge No. 12, Int'l Ass'n of Machinists v. Cameron Iron*

*Works, Inc.,* 292 F.2d 112, 118 (5th Cir.), *cert. denied,* 368 U.S. 926, 82 S.Ct. 361, 7 L.Ed.2d 190 (1961). Going further than we must go to resolve the instant case, some courts have used past practice to confirm arbitration awards that contradict written contract provisions. *Loveless v. Eastern Air Lines, Inc.,* 681 F.2d 1272 (11th Cir. 1982) (certain employees are ineligible for supplemental retirement benefits despite meeting contract eligibility requirements; relying on past practice and Fifth Circuit precedent); *Piggly Wiggly Operators' Warehouse, Inc. v. Piggly Wiggly Operators' Warehouse Independent Truck Drivers Union,* 611 F.2d 580 (5th Cir.1980) (arbitrator used negotiating history to hold a contract provision invalid; dissent protests that no ambiguity was shown). In short, the precedents clearly support using past practice and negotiating history to resolve ambiguities and gaps in written collective bargaining agreements.

Manville argues, however, that the 1983 contract contained a "no modification" clause and did contain an integration or "zipper" clause that precluded the arbitrator from using extrinsic sources:

> The arbitrator shall have no power to add to, subtract from, alter, amend or disregard any provision of this Agreement.

1983 Contract, Exhibit B, art. XIII(B) ("no modification" clause).

> All modifications, amendments or supplemental agreements to this Agreement have been reduced to writing and are listed in the attached pamphlet. Any modification, amendment or supplement executed after the effective date of this Agreement shall be void and of no force and effect unless reduced to writing and approved by the parties signatory hereto.

*Id.,* art. XXXIII(C) (integration or "zipper" clause).

██ In regard to the "no modification" clause, this Court has repeatedly held that such clauses do not prevent an arbitrator from looking to past practice. *Piggly Wiggly,* 611 F.2d at 585; *Texas Steel,* 583 F.2d at 1121; *Cameron Iron Works,* 292 F.2d at 118. As the *Piggly Wiggly* Court

observed, "[T]he mere fact that [an] arbitrator cannot modify the agreement does not mean he cannot determine what provisions are in fact part of the agreement." 611 F.2d at 585. Similarly, the "zipper" clause, on its face, requires only that "modifications, amendments, or supplemental agreements," particularly those reached *after* the signing of the written contract, be put in writing. The clause does not require that all provisions of the agreement itself be written. The arbitrator found that the obligation to fill a broke hustler position for machine No. 1 was part of the 1983 agreement itself. Indeed, he found that the *elimination* of that position would have constituted a modification—a modification that did not take place because no agreement was reached on it. Hence, the integration or "zipper" clause does not bar the arbitration award.

To summarize: the arbitrator legitimately drew on the parties' past practices and negotiating history to fill a gap in the written contract. The award does "draw its essence" from the collective bargaining agreement, so elucidated.

### C. *Public Policy*

██ A court may overturn an arbitration award if the award violates a clearly defined public policy. *W.R. Grace,* 461 U.S. at 766, 103 S.Ct. at 2183. Manville argues that the remedy ordered by the arbitrator in the instant case—reinstitution of the machine No. 1 broke hustler position—violates section 8(d) of the National Labor Relations Act, 29 U.S.C. § 158(d). This subsection provides that the obligation to bargain in good faith does not require one party to concede to the other. *Id.* Manville contends that the arbitrator forced a concession by ordering reinstatement when, at most, the arbitrator could order the parties back to the bargaining table.

Manville's argument depends on the premise that the 1983 agreement either excluded a machine No. 1 broke hustler position or was neutral on the subject. If the slate was blank, the arbitrator could not force Manville to write on it. Manville's argument fails, however, because the arbitrator found that the slate was not blank. According to the arbitrator's inter-

pretation of the agreement—which we must accept—the position existed and Manville was required to negotiate in order to gain the Union's consent to eliminate it. Indeed, Manville began negotiations but subsequently dropped them and instituted the change unilaterally.[1]

Requiring a party to abide by the terms of its own agreement does not constitute the forcing of a concession. Therefore the arbitrator's award did not violate the public policy expressed in 29 U.S.C. § 158(d).

## III. CONCLUSION

Given that an arbitrator may look to the past dealings of the parties when interpreting a collective bargaining agreement, the arbitrator in the instant case did "draw the essence" of his award from the agreement. For the same reasons, the award did not force a concession in violation of public policy. Since we are precluded from questioning the arbitrator's factual findings or interpretation of the agreement, we AFFIRM the district court's decision to enforce the award.

AFFIRMED.

---

1. Although the arbitrator did not expressly find that Manville failed to negotiate to an impasse, we agree with the district court that such a finding is implicit in the arbitrator's opinion. We must interpret an ambiguous arbitration award so as to uphold the award. *Enterprise Wheel & Car Corp.,* 363 U.S. at 597–98, 80 S.Ct. at 1361.