**INTERNATIONAL BROTHERHOOD OF ELECTRICAL WORKERS, LOCAL UNION NO. 611, AFL–CIO, Plaintiff–Appellee,**

v.

**PUBLIC SERVICE COMPANY OF NEW MEXICO, Defendant–Appellant.**

No. 91–2180.

United States Court of Appeals, Tenth Circuit.

Nov. 20, 1992.

George Cherpelis (Timothy L. Salazar and Jeffrey S. Landers, with him on the briefs), Cherpelis, Vogel, and Salazar, P.A., Albuquerque, N.M., for defendant-appellant.

John L. Hollis of John L. Hollis, P.A., Albuquerque, N.M., for plaintiff-appellee.

Before BRORBY, SETH, and EBEL, Circuit Judges.

SETH, Circuit Judge.

Appellee International Brotherhood of Electrical Workers Local No. 611 brought suit in district court under section 301 of

the Labor Management Relations Act, 29 U.S.C. § 185(a), seeking to set aside an arbitration award in favor of Appellant Public Service Company of New Mexico. Appellant filed a motion for summary judgment, and Appellee timely filed a reply. The district court, *sua sponte* treating the pleadings as cross-motions for summary judgment, vacated the arbitrator's award and granted summary judgment in favor of Appellee. We reverse.

In July 1988 Appellant notified Appellee that it intended to lay off employees in a particular "occupational group" who were covered by the collective bargaining agreement ("Agreement"). The parties futilely attempted to negotiate the method to be used for the layoffs. Ultimately, the Appellant laid off several employees, using the method that Appellant perceived to be appropriate. Thereafter, Appellee filed grievances, and pursuant to Article V, Section 3, of the Agreement, the grievances were submitted for arbitration.

The key issue to be resolved by the arbitrator was whether the layoff method employed by the Appellant was proper under Article V, Section 16B.2.a., of the Agreement. That section provides:

"If a reduction in the number of employees in any classification of any occupational group should become necessary, then the first demoted shall be those with shortest job seniority (Company wide) in any like occupational groups. Employees so demoted shall then have preemptive rights to a job in the occupational group in the next lower classification."

The arbitrator determined that the plain language of the Article V provision ("Provision") was patently ambiguous because

"[t]he first half of the opening sentence indicates a method which cannot be reconciled with the procedure stated in the second half of the same sentence. That is, the initial part of the statement focuses on a reduction in the 'occupational group' (singular) which per Article IV, Section 2, definitions is, for example, 'each' electric line department found in the Company's various divisions, which

supports the Company's interpretation herein. However, the latter part of that opening sentence switches to a focus on Company-wide seniority 'in any like occupational groups' (plural). Hence, in the 'expert opinion' of this neutral, this clause requires two forms of layoff methodology which cannot be reconciled, and therefore, it is ambiguous."

Aplt.App. Vol. I, at 46–7. In addition to this clearly identified reason, the arbitrator's decision suggests other reasons supporting his conclusion that the Provision was ambiguous. For example, the arbitrator noted that the Provision, as interpreted by Appellee, conflicted with the Management Rights provision of the Agreement as the "Company's right to determine work force numbers and to lay off … would be completely stifled" by Appellee's interpretation. Aplt.App. Vol. I, at 49.

Also, the arbitrator recognized that the Provision requires that if there were to be a layoff, the "first demoted" must possess the least "Company wide" seniority. However, the arbitrator found that the Provision "does not set out in detail the *actual* mechanics of a layoff." Aplt.App. Vol. I, at 43 (emphasis added). Thus the arbitrator was responsible for filling in the gaps as to the proper layoff method which would ensure that the "first demoted" would be those employees with the least "Company wide" seniority. Specifically, the arbitrator adopted the Appellant's method in which senior employees in a particular occupational group were allowed to laterally bump into a like occupational group, therefore, "the employees who eventually are demoted [first] downward into the next lowest classification in their occupational groups are the least senior employees, Company wide." Aplt.App. Vol. I, at 42.

After determining that the Provision was ambiguous, the arbitrator looked at the past practice and reasonableness of the parties and their interpretations in light of the entire Agreement. *See NCR Corp., E & M–Wichita v. District Lodge No. 70*, 906 F.2d 1499 (10th Cir.1990) (if plain language is vague, arbitrator may look to permissible extrinsic evidence such as other terms of

the contract, past practices of parties, and common law of the shop); *United Food & Commercial Workers Local Union No. 7R v. Safeway*, 889 F.2d 940, 948 (10th Cir. 1989) ("Fairness is a proper consideration as long as the determination of fairness draws its essence from the collective bargaining agreement."). After four days of hearings, he concluded that the Appellant's layoff method did not violate the Provision.

The district court, vacating the award, held that "[i]t may be said, and I so find, with positive assurance that the agreement is not susceptible to the Arbitrator's interpretation." Order Vacating Arbitration Award, at 4. The court also found that the arbitrator exceeded his scope of authority and "failed to give effect to the express language of the agreement," therefore, the award does not "draw its essence from the agreement." *Id.* at 4–5.

On appeal, the Appellant argues that the district court improperly exceeded the applicable standard of review by reviewing and deciding the merits of the arbitrator's award. Appellee counters that the district court correctly held the arbitrator's award to be contrary to the express language of the collective bargaining agreement, consequently, the award did not draw its essence from the contract.

"Our review of the district court's ruling [granting summary judgment in favor of Appellee] is plenary, and we utilize the same standard that the district court was required to apply." *NCR Corp.*, 906 F.2d at 1500 (citations omitted).

Our standard of review of "arbitral awards is among the narrowest known to the law. We must enforce an award which 'draws its essence from the collective bargaining agreement.'" *Litvak Packing v. United Food & Commercial Workers, Local Union No. 7*, 886 F.2d 275, 276 (10th Cir.1989) (quoting *United Steelworkers v. Enterprise Wheel & Car Corp.*, 363 U.S. 593, 597, 80 S.Ct. 1358, 1361, 4 L.Ed.2d 1424 (1960)). This has been interpreted to mean that "as long as the arbitrator is even arguably construing or applying the contract and acting within the scope of his authority, that a court is convinced he committed serious error does not suffice to overturn his decision." *United Paperworkers Int'l v. Misco, Inc.*, 484 U.S. 29, 38, 108 S.Ct. 364, 371, 98 L.Ed.2d 286 (1987). A corollary to the *Misco* standard is that "[w]e will not interfere with an arbitrator's decision 'unless it can be said with positive assurance that the contract is not susceptible to the arbitrator's interpretation.'" *Safeway*, 889 F.2d at 947 (quoting *Sterling Colo. Beef Co. v. United Food & Commercial Workers Local Union No. 7*, 767 F.2d 718, 720 (10th Cir.1985)).

■ Following the *Misco* standard, we must determine (1) whether the arbitrator acted within the contractual scope of his authority; and (2) if so, whether he was even arguably construing or applying the Agreement thus drawing the essence of his award from the Agreement.

■ When addressing the first part of the *Misco* standard, it is important to realize that the "parties have contracted for an arbitrator to resolve their disputes, not a court. They have agreed to be bound by the arbitrator's factfinding and contract interpretation whether his findings and conclusions are correct or not." *Litvak*, 886 F.2d at 276 (citations omitted). Specifically, the arbitrator was, among other things, authorized by the parties to interpret the Provision in order to determine the proper method for the layoffs. Aplt.App. Vol. I, at 46. The Appellee concedes this point in its brief. Aple. Brief, at 4 ("The Arbitrator found, as *recognized by the parties*, that '... the critical provision to be interpreted is Article V, Section 16, paragraph B.2.a. Demotions and Layoffs'" (emphasis added)). We can find nothing in the record to suggest that by interpreting the Provision the arbitrator exceeded the scope of this authority. On the contrary, he was acting precisely according to the authority granted to him by the parties.

■ Given that the arbitrator acted within the scope of his authority, we must next determine whether the award draws its essence from the Agreement. As previously discussed, the arbitrator was hired to interpret the Provision and, for numerous

reasons, concluded that the Provision was ambiguous. Then he effectively applied permissible extrinsic evidence to formulate his decision. *See NCR Corp.*, 906 F.2d 1499. The record reflects that the arbitrator, in rendering his award, satisfied the second part of the *Misco* standard by arguably construing the Provision and applying his understanding of the Agreement. It is apparent that "the arbitrator did not stray beyond the four corners of the agreement to find the essence of his decision...." *NCR Corp.*, 906 F.2d at 1504. In fact, the arbitrator's painstaking analysis of the Provision and of the permissible extrinsic evidence definitively demonstrates that his award drew its essence from the Agreement, and was not an attempt to dispense his own sense of industrial justice. *See United Steelworkers*, 363 U.S. 593, 80 S.Ct. 1358.

In addition, we are not convinced, as was the district court, that it can be said with positive assurance that the Provision is not susceptible to the arbitrator's interpretation. *See Safeway*, 889 F.2d at 947. We must conclude that the arbitrator's award is not "so unfounded in reason and fact, so unconnected with the wording and purpose of the ... agreement as to 'manifest an infidelity to the obligation of the arbitrator'", *Mistletoe Express Service v. Motor Expressmen's Union*, 566 F.2d 692, 694 (10th Cir.1977) (quoting *Brotherhood of Railroad Trainmen v. Central of Georgia Railway Co.*, 415 F.2d 403, 415 (5th Cir. 1969)), that the essence of the award has not been drawn from the Agreement or that it violates the express language of the Agreement.

Because "[i]t is the arbitrator's construction which was bargained for; and so far as the arbitrator's decision concerns construction of the contract, the courts have no business overruling him because their interpretation of the contract is different from his." *United Steelworkers*, 363 U.S. at 599, 80 S.Ct. at 1362. As we held in *NCR Corp.*, 906 F.2d at 1506, it is not our function to determine whether the arbitrator misinterpreted the Agreement. "[A]s we have explained and emphasized, our function is to do no more than determine

whether the arbitrator's decision was drawn from the Agreement and the several permissible sources he employed to enable him to render his ... [a]ward. We hold that the arbitrator here fully complied with his assignment, in that his award drew its essence form the parties' collective bargaining Agreement." *Id.*

Accordingly, the district court's order of July 15, 1991 is REVERSED, and the arbitrator's Opinion and Award is to be reinstated in its entirety.

IT IS SO ORDERED.