CONOCO, INC., a Delaware Corp., Plaintiff,

v.

OIL, CHEMICAL & ATOMIC WORKERS INTERNATIONAL UNION (AFL—CIO) and its Local 5–857, Defendant.

No. 98–CV–91–C(M).

United States District Court, N.D. Oklahoma.

Nov. 9, 1998.

J. Patrick Cremin, Hall Estill Hardwick Gable Golden & Nelson, Tulsa, OK, William D. Fisher, Hall Estill Hardwick Gable Golden & Nelson, Tulsa, OK, for Conoco Inc., a Delaware corporation, plaintiff.

Steven R. Hickman, Frasier Frasier & Hickman, Tulsa, OK, Kathleen A. Hostetler, OCAW, General Counsel, Lakewood, CO, for Oil, Chemical and Atomic Workers International Union, defendant.

J. Patrick Cremin, Hall Estill Hardwick Gable Golden & Nelson, Tulsa, OK, William D. Fisher, Hall Estill Hardwick Gable Golden & Nelson, Tulsa, OK, for Conoco Inc., counter-defendant.

## ORDER

H. DALE COOK, Senior District Judge.

Before the Court is plaintiff, Conoco's, motion for summary judgment, brought pursuant to Rule 56 of the Federal Rules of Civil Procedure. Conoco brings this action under the Labor Management Relations Act, 29 U.S.C. § 185, and the Federal Arbitration Act, 9 U.S.C. §§ 1–16, to vacate an unfavorable arbitration award. The following material facts are undisputed.

The present dispute centers on the termination by Conoco of John Botts for alleged improper conduct. At the time of his termination, Botts was a unit operator at Conoco's Ponca City plant and had been employed by the company for approximately twenty-five years. Also at the time of termination, Botts was the Bargaining Unit Chairman for the defendant, Union. Botts' supervisor at Conoco was Bill Biernacki.

Botts was first accused in 1996 and 1997 of abusing e-mail privileges at Conoco and threatening a fellow employee. In January 1997, as a result of the alleged misconduct involving the company's e-mail system, Biernacki advised Botts that the decision was made to suspend him from work for four days without pay. Botts brought a grievance concerning the discipline, but no final disposition was made prior to his termination.

Also in January 1997, Botts received a subpoena to appear as a witness in a lawsuit involving Roger Rowe, a former Conoco employee. As a result of Rowe's lawsuit, Botts had also been previously subpoenaed by Conoco to appear at a deposition in December 1993. In February 1997, Botts advised his supervisor and time scheduler that he would be absent from work on February 19, 1997,

in order to testify, and he represented that since he was being requested to testify a result of Conoco calling him for the 1993 deposition, he would be claiming pay for serving as a witness. Botts also advised these individuals that it was his affiliation with the Union and being chairman that required his presence at trial. Botts testified in Oklahoma City on February 19, and he requested that Conoco pay him for twelve hours under the parties' Collective Bargaining Agreement ("CBA") for being a witness at trial.[1]

After his claim for pay was changed to a no pay day by a payroll clerk, Botts complained to his supervisor and filed a grievance on March 6, 1997.[2] After Conoco initiated an investigation into the pay matter, Botts left a voice mail message for Biernacki on February 21, 1997, advising that his trial testimony resulted from Conoco deposing him, and that his testimony was based on that original deposition. Botts further advised in his message that he was actually a witness for neither party, but that it was his affiliation with the Union that required his presence. Botts concluded the message by representing that he interpreted the time spent testifying as properly payable by Conoco. On March 7, 1997, however, Botts left a voice mail message for Biernacki advising that he had, in fact, received a subpoena from Rowe's attorney, rather than from Conoco. Conoco independently determined, by contacting its attorneys, that Botts had not been subpoenaed by Conoco, but that he had been subpoenaed by Rowe's attorney to testify as a witness in Rowe's case-in-chief.

Following a disciplinary meeting,[3] Biernacki advised Botts on March 10, 1997, of Conoco's decision to terminate him, effective March 7, 1997, for continued violations of Conoco's Rules of Conduct. In the written notice of termination, Conoco cited the prior instances of e-mail misuse, threatening behavior, the suspension that followed, Botts' poor attitude, and Botts' attempt to improp-

erly receive twelve hours of pay. With respect to the most recent allegation, Conoco asserted that Botts violated the Rules of Conduct by claiming to have been subpoenaed by Conoco when, in fact, he knew that he had been subpoenaed by Rowe's attorney, and that Botts attempted to profit from the misrepresentation by making a false claim for pay. Conoco also alleged that Botts continued his dishonesty during its investigation of the pay issue by continuing to mislead and withhold facts.

The Union filed a grievance on behalf of Botts on March 10, 1997, protesting the termination on the issue of "just cause." The Union demanded an immediate hearing. The parties met on March 25, 1997, and Conoco advised the Union on April 4, 1997, that it was unable to respond to the grievance unless the Union furnished certain information. The Union declined the request, and Conoco again requested the Union to furnish information on May 7, 1997. No final action was taken, and the matter was ultimately set for a hearing before an arbitrator, which was held on August 27 and September 10, 1997. The arbitrator issued his opinion and award on November 3, 1997.

The sole issue presented for arbitration was: "Did the Company discharge the grievant for just cause and, if not, what shall the remedy be?" In his thorough opinion, the arbitrator outlined the contentions of the parties and referenced the relevant parts of the CBA which govern the dispute. In his findings and conclusions, the arbitrator found that Conoco, pursuant to the CBA, has sole responsibility to discipline and discharge employees for just cause. Because "just cause" is not defined in the CBA, the arbitrator turned to outside sources for guidance. The arbitrator thus stated, "Just cause is a term which has received considerable attention from both arbitrators and the judiciary. However, perhaps the single most important decision handed down on the question of just

---

1. The CBA provides that an employee testifying at the request of Conoco is entitled to be paid as if he were performing a regular scheduled workday.

2. This grievance was not resolved by the time Botts was terminated.

3. Conoco represents that at the meeting, Botts admitted for the first time that he had been subpoenaed to testify, but he did not identify by whom.

cause was the 1972 *Whirlpool Corp.* decision by Arbitrator Carroll Daughtery." *See Whirlpool Corp. v. International Union of Elec., Radio, & Mach. Workers Local 808*, 58 Lab.Arb. (BNA) 421 (1972) (Daugherty, Arb.). In explaining the reasons behind his decision to utilize the *Whirlpool* test, the arbitrator said that the " 'Seven Test Method' has been subscribed to by many arbitrators since 1972 and the present arbitrator has long felt that the *Whirlpool* 'Seven Test Method' of determining just cause in discharge cases is objective and appropriate in almost every just cause discharge matter." The arbitrator proceeded to describe the "Seven Test Method" of determining whether just cause existed for the discipline Botts received, as developed by the *Whirlpool* case.

The arbitrator concluded that, under the *Whirlpool* test, Conoco failed to establish just cause for Botts' discharge. In reaching his conclusion, the arbitrator found that: (1) Conoco did not give Botts forewarning of the probable consequences of his conduct regarding the alleged attempt to receive unearned pay since Conoco has a practice of permitting employees who are in doubt about their enti-

tlement to pay to simply submit the matter to the payroll department for a determination, which Botts did;[4] (2) Conoco's rules against larceny, fraud, or dishonesty are related to the orderly, efficient and safe operation of its business, and Conoco should be able to expect an employee not to commit such acts; (3) Conoco did make an attempt to determine whether Botts was entitled to be paid under the CBA for the time he spent testifying; (4) Conoco did not conduct a fair and objective investigation;[5] (5) Conoco did not obtain substantial and compelling proof that Botts was guilty of the allegations against him, since no fair and objective investigation was ever conducted; (6) Conoco failed to apply its rules and penalties without discrimination to all employees since it has allowed many employees to claim pay even when they did not know whether they were entitled to pay or not;[6] and (7) there is a serious question as to whether the degree of discipline was reasonably related to the seriousness of the offense.[7] Based on an assessment of all the factors, and especially because the arbitrator concluded that Conoco failed to prove that Botts was guilty of the

---

4. In making this finding, the arbitrator noted that Botts disclosed to his supervisor and scheduler before attending trial that he was going to make a claim for pay, and that neither objected. The arbitrator also noted that Conoco has, in the past, suspected other employees of making false claims against payroll but has not discharged any other employee for doing so.

5. In reaching this conclusion, the arbitrator found that this factor recognizes a due process right. The arbitrator concluded that not only does the *Whirlpool* test recognize industrial due process for grievants, the CBA also recognizes that there must be some due process for full time employees who are discharged and who protest the dismissal on the basis of just cause. The arbitrator pointed to the CBA provision which requires an immediate hearing when a full-time employee is discharged and the dismissal is protested on the issue of just cause. The arbitrator further found that although the Union demanded an immediate hearing, the type of hearing contemplated by the CBA was not provided. The arbitrator went on to state that *Whirlpool's* fourth test contemplates a hearing prior to discharge. The arbitrator also found that it is essential that a neutral official be appointed to make an impartial investigation. In the present case, however, Botts' supervisor (and accuser) made the investigation. Lastly, the arbitrator found that since Botts was a known Union activ-

ist, the arbitrator had an obligation to examine evidence with special care. The arbitrator pointed to a prior decision which states that whenever an employee who holds a high Union office is discharged, there is always the question of whether the discharge is discriminatory or undertaken in bad faith so that the company can rid itself of a zealous unionist. The arbitrator concluded that he could not find that there was no discrimination against Botts as a result of his Union activities.

6. The arbitrator found that there was evidence that some employees had engaged in clear fraud and that Conoco depended on its payroll clerks to catch and correct the errors. However, even though the guilty employees may have been reprimanded, very few cases, if any, resulted in termination. Hence, the arbitrator found that there was evidence of disparate treatment in matters similar to the present case.

7. The arbitrator could not find, beyond a reasonable doubt, that Botts was guilty of the allegations against him. Rather, the arbitrator found him to be open about what he was attempting to do prior to the time he did it, and he used accepted procedure for claiming pay. The arbitrator also found that it was extremely suspicious that within four days after filing his pay grievance, Botts was discharged.

allegations against him, the arbitrator ordered Conoco to immediately reinstate Botts and give him back pay. Conoco complied with the award.

In considering a motion for summary judgment, the Court "has no real discretion in determining whether to grant summary judgment." *U.S. v. Gammache,* 713 F.2d 588, 594 (10th Cir.1983). The Court must view the pleadings and documentary evidence in the light most favorable to the nonmovant, *Cone v. Longmont United Hosp. Ass'n,* 14 F.3d 526, 527–28 (10th Cir.1994), and summary judgment is only appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c). "A dispute is genuine only if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Akin v. Ashland Chemical Co.,* 156 F.3d 1030, 1034 (10th Cir.1998). Further, " 'the moving party carries the burden of showing beyond a reasonable doubt that it is entitled to summary judgment.' " *Hicks v. City of Watonga,* 942 F.2d 737, 743 (10th Cir.1991) (quoting *Ewing v. Amoco Oil Co.,* 823 F.2d 1432, 1437 (10th Cir.1987)). Once the moving party meets its burden, the burden shifts to the nonmoving party to demonstrate a genuine issue for trial on a material matter. *Bacchus Indus., Inc. v. Arvin Indus., Inc.,* 939 F.2d 887, 891 (10th Cir.1991). The "party opposing a properly supported motion for summary judgment may not rest upon the mere allegations or denials of his pleading, but ... must set forth specific facts showing that there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986) (citations omitted).

The Federal Arbitration Act "evinces a strong federal policy in favor of arbitration," *ARW Exploration Corp. v. Aguirre,* 45 F.3d 1455, 1462 (10th Cir.1995), and, as such, it is well-settled that federal courts have a very limited role in reviewing an arbitrator's decision. Maximum deference is owed to the arbitrator's decision, *id.,* and, indeed, a federal court's "powers of review [in this area] have been described as 'among the narrowest known to law.' " *Denver & Rio Grande Western Railroad Co. v. Union Pacific Railroad Co.,* 119 F.3d 847, 849 (10th Cir.1997). Because a primary purpose behind arbitration agreements is to dispense with the cost and delay of litigation, "courts must exercise great caution when asked to set aside an award." *Aguirre,* 45 F.3d at 1463 (quoting *Foster v. Turley,* 808 F.2d 38, 42 (10th Cir.1986)). "A court may only vacate an arbitration award for reasons enumerated under the Federal Arbitration Act, 9 U.S.C. § 10, or for a handful of judicially created reasons.... Outside of these limited circumstances, an arbitration award must be confirmed.... Errors in either the arbitrator's factual findings or his interpretation of the law (unless that interpretation shows a manifest disregard of controlling law) do not justify review or reversal on the merits...." *Denver & Rio Grande Western Railroad Co.,* 119 F.3d at 849 (citations omitted). Since it is the arbitrator's construction that was bargained for, it is not the Court's function to determine whether the arbitrator misinterpreted the parties' collective bargaining agreement. *International Brotherhood of Electrical Workers, Local Union No. 611, AFL—CIO v. Public Service Co. of New Mexico,* 980 F.2d 616, 619 (10th Cir.1992). And, an "arbitrator's award is not open to review on the merits."[8] *Sterling Colorado Beef Co. v. United Food and Commercial Workers,* 767 F.2d 718, 720 (10th Cir.1985). Consequently, the Court "will set aside an arbitrator's decision 'only in very unusual circumstances'...." *Kelley v. Michaels,* 59 F.3d 1050, 1053 (10th Cir.1995) (quoting *First Options of Chicago, Inc. v. Kaplan,* 514 U.S. 938, 115 S.Ct. 1920, 1923, 131 L.Ed.2d 985 (1995)). *See also Ormsbee Development Co. v. Grace,* 668 F.2d 1140, 1146–47 (10th Cir.1982) ("Once an arbitration award is en-

---

8. "The merits embrace not only asserted errors in determining the credibility of witnesses, the weight to be given their testimony, and the determination of factual issues, but also the construction and application of the collective bargaining agreement." *Sterling Colo. Beef Co.,* 767 F.2d at 720 (quoting *Amalgamated Butcher Workmen v. Capitol Packing Co.,* 413 F.2d 668, 672 (10th Cir.1969)).

tered, the finality of arbitration weighs heavily in its favor and cannot be upset except under exceptional circumstances.").

Even if the Court should conclude that the arbitrator's award must be set aside, the Court will not attempt to settle the merits of the parties' dispute, since doing so "would improperly substitute a judicial determination for the arbitrator's decision that the parties bargained for in the collective-bargaining agreement." *United Paperworkers International Union, AFL—CIO v. Misco, Inc.*, 484 U.S. 29, 41 n. 10, 108 S.Ct. 364, 98 L.Ed.2d 286 (1987). *See also Jenkins v. Prudential–Bache Securities, Inc.*, 847 F.2d 631, 634–35 (10th Cir.1988) (the role of the courts in reviewing an arbitrator's award is limited to the determination of whether the award draws its essence from the parties' contract, and the award is not open to review on the merits) (quoting *Sterling Colo. Beef Co.*, 767 F.2d at 720). Rather, in such a case, the Court is obligated to simply vacate the award in order to permit the possibility of further proceedings before the arbitrator. *Misco*, 484 U.S. at 41 n. 10, 108 S.Ct. 364.

With these principles in mind, the Court turns to the substance of Conoco's argument. As the party attacking the arbitrator's award, Conoco bears the burden of showing that the award should be vacated. *Ormsbee*, 668 F.2d at 1147. *See also Rocket Jewelry Box, Inc. v. Noble Gift Packaging, Inc.*, 157 F.3d 174 (2d Cir.1998) (The showing required to avoid summary confirmation of an award is high, and the party moving to vacate it bears the burden of proof). In asking the Court to vacate the arbitrator's award, Conoco maintains that the arbitrator exceeded his authority in fashioning the award, that the award does not draw its essence from the CBA, and that the award is contrary to the express provisions of the CBA. *See Barnard v. Commercial Carriers, Inc.*, 863 F.2d 694, 697 (10th Cir.1988) (an award cannot be upheld if found contrary to the express language of the contract). Although Conoco's allegations, if proven, permit this Court to vacate the arbitrator's award, it is well-settled that " 'as long as the

arbitrator is even arguably construing or applying the contract and acting within the scope of his authority, that a court is convinced he committed serious error does not suffice to overturn his decision.' ... [That is, a court] will not interfere with an arbitrator's decision unless it can be said with positive assurance that the contract is not susceptible to the arbitrator's interpretation." *International Brotherhood of Electrical Workers*, 980 F.2d at 618 (quoting *Misco*, 484 U.S. at 38, 108 S.Ct. 364).

Conoco's principle argument is that the arbitrator abused and exceeded his authority by using the *Whirlpool* seven factor test to determine whether Botts was discharged for just cause. Conoco argues that the parties never intended to use any such test and that it violates the express terms of the CBA. Conoco contends that the arbitrator resorted to his own brand of industrial justice in fashioning the award. As a result of these errors, Conoco maintains that the arbitrator essentially rewrote the parties' contract, rather than interpreted it, and that his award is contrary to the express provisions of the CBA. The Union, on the other hand, argues that the arbitrator's award must be upheld since it draws its essence from the agreement. The Union contends that since the CBA gives the arbitrator the authority to determine just cause, the arbitrator may properly turn to reasonable interpretations generally utilized in labor cases.

The Court cannot agree that the arbitrator's award does not draw its essence from the parties' CBA, especially in light of the strict standard of review outlined above.[9] Inasmuch as Conoco argues that the arbitrator exceeded his authority by looking outside the CBA to determine whether just cause existed for Botts' termination, the Supreme Court has

> emphasized that an arbitrator may look beyond the written contract when interpreting a collective bargaining agreement: The collective bargaining agreement ... is more than a contract; it is a generalized code to govern a myriad of cases which the

9. "The courts are bound to interpret the arbitrator's award and the contract broadly so as to uphold the award." *Manville Forest Products*

*Corp. v. United Paperworkers International Union, AFL—CIO*, 831 F.2d 72, 74 (5th Cir.1987).

draftsmen cannot wholly anticipate.... It calls into being a new common law—the common law of a particular industry or of a particular plant.... Gaps may be left to be filled in by reference to the practices of the particular industry and of the various shops covered by the agreement.... The labor arbitrator's source of law is not confined to the express provisions of the contract, as the industrial common law—the practices of the industry and the shop—is equally a part of the collective bargaining agreement although not expressed in it.

*Manville Forest Products Corp. v. United Paperworkers International Union, AFL—CIO,* 831 F.2d 72, 75 (5th Cir.1987) (quoting *United Steelworkers of America v. Warrior & Gulf Navigation Co.,* 363 U.S. 574, 578–82, 80 S.Ct. 1347, 4 L.Ed.2d 1409 (1960)). Consequently, courts have refused to apply contract-law concepts to CBA's, and an arbitrator may turn to extrinsic evidence in order to interpret an ambiguous provision. *Id.* at 75–76. Additionally, it is clear that since an arbitrator is not confined to the express terms of the CBA, he may consider industrial common law in fashioning his award. *SFIC Properties, Inc. v. International Assoc. of Machinists & Aerospace Workers,* 103 F.3d 923, 925 (9th Cir.1996).

In the present case, the CBA expressly provides that hiring, maintaining order, and discipline or discharge for just cause are solely the responsibility of Management and, although an arbitrator has no authority to question the type or degree of discipline taken against a Union member, the arbitrator does have the authority to determine whether the Company had "just cause" for taking the actions which it did. "Just cause" is not defined, or otherwise interpreted, by the CBA. Hence, because the arbitrator is specifically authorized to determine whether just cause existed for the disciplinary action taken, and since the CBA does not provide guidance on the proper meaning or interpre-

tation of that phrase, the arbitrator must necessarily look outside the agreement to determine what constitutes just cause for a particular disciplinary action. That is, in leaving "just cause" undefined in the CBA, the parties must have intended for the arbitrator to look to sources outside the CBA when attempting to interpret the phrase. The arbitrator therefore resorted to a common test used by arbitrator's since 1972 to determine whether Botts was terminated for just cause. Indeed, the arbitrator noted in his opinion that the *Whirlpool* seven factor test is perhaps the single most important decision on the question of just cause. And, the arbitrator stated that the test has been subscribed to by many arbitrators since 1972 and that he, himself, has long felt that the test is appropriate in almost every just cause discharge matter.[10]

Hence, the Court cannot find that the arbitrator exceeded his authority in resorting to the *Whirlpool* test. Since the test was developed in 1972 and has apparently been widely used and relied upon since that time, the parties should have known in 1996 when they entered into the CBA that such a test might be used to interpret a phrase left undefined by the agreement. Thus, the arbitrator, in looking to the *Whirlpool* "just cause" test, properly resorted to industrial common law for guidance in interpreting an undefined phrase. Indeed, had the arbitrator formulated a test of his own making, Conoco may have had an argument that the arbitrator attempted to dispense his own brand of industrial justice. Rather than doing so, however, the arbitrator employed a well-known and widely used test, which he felt was most appropriate for settling the dispute. Moreover, Conoco does not suggest which test is appropriate for determining the existence of just cause.

Further, in utilizing the *Whirlpool* test, the arbitrator did not violate the express terms

---

**10.** The Court cannot find that the arbitrator's reliance upon the *Whirlpool* test was misplaced or that his statements regarding the importance and overall use and dependence on the test by himself and others in the field are factually erroneous. It appears that the test has received attention and has been cited in labor cases since its inception in 1972. *See e.g. E.I. DuPont de Nemours and Co. v. Grasselli Employees Indepen-*

*dent Assoc. of East Chicago, Inc.,* 790 F.2d 611, 614–15 (7th Cir.1986); *American Federation of State County and Municipal Employees, District Council 88, AFL—CIO,* 130 Pa.Cmwlth. 575, 568 A.2d 1352, 1356 (1990). *See also* Grodin, Joseph, *Toward a Wrongful Termination Statute for California,* 42 Hastings L.J. 135 n. 64 (1990) (citing Koven & Smith, *Just Cause: The Seven Tests* (1985)).

of the CBA. Rather, the arbitrator's use of the test is, in fact, consistent with his specific duties under the CBA to interpret "just cause" and determine if it existed to justify a particular disciplinary action. Although Conoco argues that the parties did not agree to the use of the test, they did not expressly prohibit its use, either. And, by leaving "just cause" undefined, Conoco must have known that an arbitrator would be forced look outside the CBA for guidance in defining, interpreting, and applying that phrase.

■ The Court also disagrees with Conoco's argument that the arbitrator substituted his own views with respect to the severity of discipline to be imposed, in violation of the express terms of the CBA which provide that disciplinary decisions are the sole responsibility of Conoco. Rather, the arbitrator found that he could not conclude, beyond a reasonable doubt,[11] that Botts was, in fact, guilty of larceny, attempted larceny, fraud, or deceit. Regardless of the Court's own views on this matter, the arbitrator's findings of fact cannot be disturbed. Since the arbitrator found Botts "not guilty," he did not substitute his own views of the proper discipline to be imposed. Indeed, a finding of not guilty necessarily means that just cause was lacking and that Botts should not have been disciplined at all.

For these reasons, there is also no merit in Conoco's argument that the arbitrator improperly attempted to modify the terms of the CBA, in violation of the CBA's "no modification" clause. As explained above, the arbitrator properly utilized the *Whirlpool* seven factor test to determine whether Botts was terminated for just cause. The arbitrator did not thereby modify the CBA by adding to, or subtracting from, the terms of the agreement. Rather, the seven factor test was used solely to interpret the undefined phrase, "just cause." [12]

In an attempt to succeed in this matter, Conoco also cites to an Order entered by Judge Brett of this Court, and subsequently affirmed by the Tenth Circuit in a non-published opinion. *See Conoco, Inc. v. Oil, Chemical & Atomic Workers International Union, (AFL—CIO)*, 1988 WL 163062 (10th Cir.1988). Conoco vigorously argues that these decisions mandate the vacation of the arbitrator's decision in the present case. The Court has reviewed these decisions, and notwithstanding Conoco's argument to the contrary, the Court does not find them to be inconsistent with this Court's rulings in the present case. First and foremost, the former case is distinguishable from the present in that the Union member who was disciplined by Conoco in the former was caught stealing Conoco's equipment and tools, and he pled guilty to the criminal activity. By reversing the employer's choice of discipline, the arbitrator violated the express CBA provision vesting disciplinary decisions with the employer. In the present case, however, the arbitrator found that Conoco failed to prove that Botts was guilty of criminal conduct, and Botts never pled guilty to anything. Accordingly, the arbitrator here did not question the degree of discipline imposed, but, rather, found that no discipline was proper. Further, the arbitrator in the former case based his decision in favor of the Union on the fact that the discipline of discharge was too severe in light of the fact that other employees had received more lenient discipline, and the arbitrator concluded that an employer must treat all employees equally. Here, however, no discipline was warranted since the arbitrator found Botts not guilty of the alleged offense. Hence, the arbitrator's remark in the present case that Conoco should dispense even-handed discipline was a mere factor in the overall test for determining just cause, and it did not constitute the reason for the arbitrator's award in favor of the Union. Judge Brett and the Circuit further found in

---

11. Conoco does not contend that this high standard of proof was erroneously adopted.

12. In its motion for summary judgment, Conoco also complains about the application of specific factors of the *Whirlpool* test. In particular, Conoco argues that the arbitrator violated and added terms to the CBA by holding that a pretermination hearing is required prior to discharge,

under factor four of the test, and that discrepancies in discipline for like offenses are to be considered in determining just cause, under factor six of the test. However, because these factors make up the overall test for determining just cause, a duty specifically left to the arbitrator, the Court does not believe that the use of such factors violates the CBA or renders the award contrary to the terms of the CBA.

the former case that the arbitrator based his decision on a principle not found anywhere in the CBA or industrial common law by requiring the employer to treat all employees alike regardless of the severity of the offense, and, as such, he imposed his own brand of industrial justice. Here, however, the arbitrator relied on a test formulated in 1972 and used by arbitrators since that time. And, the Circuit specifically stated in the former case that "an arbitrator must consider any existing common law of the particular plant or industry in reaching his decision." This was done here. Lastly, the Circuit noted that aside from applying the principle that employees must be treated equally for different offenses, the arbitrator found that there was just cause for the discharge. In the present case, however, the arbitrator held that "Under all of the circumstances, with as many negative answers to the 'Seven Test Method' of determining just cause, the arbitrator fails to find that the Company carried its burden of proof to show that the Grievant was discharged for just cause beyond a reasonable doubt." Moreover, the arbitrator stated that if Botts had been shown to be guilty of larceny, fraud or deceit beyond a reasonable doubt as contended by the Company, then the degree of discipline may have been reasonably related to the seriousness of the employee's proven offense. Conoco's reliance on the former case is, therefore, misplaced.

■ Thus, it cannot be said with positive assurance that the CBA is not susceptible to the arbitrator's interpretation, and the Court concludes "that the arbitrator's award is not so unfounded in reason and fact, so unconnected with the wording and purpose of the ... agreement as to manifest an infidelity to the obligation of the arbitrator, ... that the essence of the award has not been drawn from the Agreement or that it violates the express language of the Agreement." *International Brotherhood of Electrical Workers*, 980 F.2d at 618 (citations and quotations omitted). "An award draws its 'essence' from the collective bargaining agreement so long as it is 'rationally inferable' in 'some logical way' from that agreement." *Manville Forest Products Corp.*, 831 F.2d at 74. For the reasons stated, the Court finds and concludes that the arbitrator's award is rationally inferable from the CBA.

■ Conoco also alleges that Botts withheld and concealed evidence from the arbitrator and that, therefore, the award was procured by fraud or undue means. Conoco contends that at the time of arbitration, Botts was in possession of a letter from Rowe's attorney, dated January 13, 1997, which confirms that Botts knew that he was serving as a witness at the request of Rowe, not Conoco, and, as such, he knew that he was not entitled to pay. The letter states, "As you know, you have been identified as a witness by my client Roger Rowe to testify in his behalf at the trial of the above action and your deposition was recently taken by Conoco's attorney. On December 31, 1996, I received a copy of the transcript of your deposition taken by the defendant Conoco...." The letter goes on to instruct Botts to review his deposition taken by Conoco and correct any errors.[13] Conoco argues that the letter shows that Botts' discharge was for just cause, and Conoco asserts that had Botts not concealed the letter, the arbitrator would have confirmed the discipline.[14]

■ Pursuant to 9 U.S.C. § 10(a)(1), the Court may vacate an arbitrator's award where "the award was procured by corruption, fraud, or undue means." "However, 'in order to protect the finality of arbitration decisions, courts must be slow to vacate an arbitral award on the ground of fraud.'"[15]

---

13. This language in the January letter may actually support Botts' contentions here. The letter seems to imply that Botts was being called as a witness by Rowe because of Botts' deposition, taken earlier at Conoco's request. Hence, the letter could be interpreted as providing some basis for Botts' belief, as a non-lawyer, that the reason he was called to testify at the Rowe trial was because he had previously been deposed at the request of Conoco.

14. Conoco represents that it was not until March 1998 in a lawsuit filed by Botts against Conoco that Conoco learned of the existence of this letter.

15. If the Court determines that the arbitrator's award was procured by fraud or undue means, the Court must simply vacate the award and remand the action to the arbitrator for a rehearing, since the Court may not decide the merits of the dispute. *Foster v. Turley*, 808 F.2d 38, 42 (10th Cir.1986).

*Foster v. Turley*, 808 F.2d 38, 42 (10th Cir. 1986) (quoting *Dogherra v. Safeway Stores, Inc.*, 679 F.2d 1293, 1297 (9th Cir.1982)). "The party asserting fraud must establish it by clear and convincing evidence, ... and must show that due diligence could not have resulted in discovery of the fraud prior to arbitration." *Id. See also Gingiss International, Inc. v. Bormet*, 58 F.3d 328, 333 (7th Cir.1995) (moving party must demonstrate that fraud or undue means was (1) not discoverable upon exercise of due diligence prior to arbitration, (2) materially related to an issue in arbitration, and (3) established by clear and convincing evidence); *Bonar v. Dean Witter Reynolds, Inc.*, 835 F.2d 1378, 1383 (11th Cir.1988) (same). Further, "undue means" connotes behavior that is immoral, if not illegal. *A.G. Edwards & Sons, Inc. v. McCollough*, 967 F.2d 1401, 1403 (9th Cir. 1992). And, the test for determining whether the award was procured by fraud has been held to apply to cases raising claims of "undue means." *Id.* at 1404. Finally, there must be a nexus between the alleged fraud and the basis for the arbitrator's award, since 9 U.S.C. § 10(a) "does not provide for vacatur in the event of any fraudulent conduct, but only 'where the award was procured by corruption, fraud, or undue means.'" *Forsythe International, S.A. v. Gibbs Oil Co. of Texas*, 915 F.2d 1017, 1022 (5th Cir.1990). "The requisite nexus may exist where fraud prevents the [arbitrator] from considering a significant issue to which [he] does not otherwise enjoy access." *Id.*

While the Court finds it somewhat disturbing that Botts failed to turn over the January 13, 1997, letter at issue prior to arbitration, and although the letter tends to rebut Botts' claim that he reasonably believed that he was, in fact, testifying at Rowe's trial at the request of Conoco, the Court simply cannot find that the Union procured the arbitrator's award by fraud or undue means. First, Conoco admits that on March 7, 1997, Botts left a message on his supervisor's voice mail system, prior to his discharge and well before any arbitration hearing, representing that he had, in fact, received a subpoena from Rowe's attorney, rather than from Conoco. The Court agrees with the Union that this is essentially all the January 1997 letter states. Moreover, Conoco knew who its witnesses were, and it confirmed with its own attorneys prior to Botts' discharge that he had not been subpoenaed by Conoco. Additionally, court records from the Rowe case would reveal the names of the individuals appearing on each party's witness list, and an examination of such documents would clearly reveal that Botts was scheduled to serve as a witness for Rowe. From a review of the arbitrator's statement of facts, it is apparent that the arbitrator was presented with the argument that although Botts may have attempted to mislead Conoco initially and improperly make a claim for pay, he subsequently admitted to receiving a subpoena from Rowe when, as Conoco argues, he "finally grasped the gravity of the situation." Since the arbitrator was presented with Conoco's argument that Botts attempted to defraud Conoco by submitting a false claim for pay when he knew that he was not being called to testify at the request of Conoco, and that Botts' actual knowledge of not being subpoenaed by Conoco was expressed prior to his discharge in the March 7, 1997, voice mail message to his supervisor, the alleged fraud in withholding the letter did not prevent the arbitrator "from considering a significant issue to which [he did] not otherwise enjoy access." *Forsythe*, 915 F.2d at 1022. As noted, the January 1997 letter is essentially cumulative evidence which merely states in writing what Conoco concedes that Botts told his supervisor on March 7, prior to his discharge. Although Conoco presumably presented the evidence of the March 7, 1997, voice mail message to the arbitrator to show that Botts knew he was not being called to testify at the request of Conoco in February 1997, the arbitrator nonetheless found that Conoco failed to prove that Botts was guilty of the alleged offense beyond a reasonable doubt. Conoco has therefore failed to meet its burden of showing by clear and convincing evidence that the arbitrator's award was procured by fraud or undue means.

Accordingly, Conoco's motion for summary judgment is hereby DENIED.