INTERNATIONAL BROTHERHOOD OF ELECTRICAL WORKERS, LOCAL UNION NO. 1654, Plaintiff,

v.

PHILIPS DISPLAY COMPONENTS, Defendant.

No. 3:99CV7486.

United States District Court, N.D. Ohio, Western Division.

Sept. 19, 2000.

Snyder, Rakay & Spicer, Dayton, OH, for Plaintiff.

Robert J. Brown, Thompson, Hine & Flory, Thompson, Hine & Flory, Dayton, OH, for Defendant.

## ORDER

CARR, District Judge.

This is a labor dispute in which the International Brotherhood of Electrical Workers, Local Union No. 1654, seeks to vacate the arbitration decision of Arbitrator George R. Fleischli. Pending is the Union's motion for summary judgment (Doc. 10), and Philips Display Components' cross-motion for summary judgment. (Doc. 11). For the following reasons, the Union's motion shall be denied, and the Company's motion shall be granted.

## BACKGROUND

The Union and Company were parties to a collective bargaining agreement in effect from October 2, 1994 to September 24, 1997. (*See* Doc. 10 at Ex. B). On May 1, 1997, the Company issued a layoff notice listing 105 employees to be placed on voluntary layoff status. (*Id.*). In addition, the notice included twenty lower seniority employees exempted from the layoff because they possessed special skills vital to the operation of the plant. (*Id.*). Ten of the twenty employees held from the layoff worked in "32V," a production department created pursuant to the terms of a letter of agreement reached in 1993. (*Id.*). All ten of the 32V employees occupied positions deemed to be "skilled." (*Id.*).

On June 10, 1997, the Union filed a grievance, which, while broadly worded, focused on the Company's decision to exempt the ten 32V employees. (*Id.*). In the grievance, the Union alleged that the Company violated Article VIII of the collective bargaining agreement by laying off employees with more seniority than employees who were not laid-off.

Article VIII provides, in pertinent part, as follows:

### ARTICLE VIII SENIORITY

(A) Whenever a reduction in forces occurs, the least senior employees in the Plant shall be the first to be displaced by a change of classification, transfer or layoff and then the following procedure shall apply:

1. The least senior employee or employees, as the case may be, in the job classification and shift (departmentally) overmanned and who is displaced, may elect to displace (a) the least senior employees on the shift of his choice in any job in his same or any lower pay rate classification; (b) bid to any posted job, (c) elect to fill any open job provided the displaced employee possesses sufficient seniority and is capable of performing the work required.

2. In the application of the above provisions and in the same manner, employees holding jobs in labor grade one (1) may displace employees in labor grade two (2) provided they have previously held such job and the job was attained through a bid or bump.

3. Any employee who possesses insufficient seniority or who is physically incapable of performing the job held by any less senior employee shall be placed on layoff with right of recall as set forth in Section (B) of this Article.

    \*    \*    \*    \*    \*    \*

In the event any of the open jobs created by the layoff of least senior in the Plant are not filled though the application of steps es forth above, they shall be posted in accordance with Section (B) of this Article.

(*Id.; see also* Doc. 10 at Ex. A)

Because the parties were not able to resolve the grievance, the dispute was submitted to Arbitrator Fleischli in accordance with the terms of the collective bargaining agreement. (*See* Doc. 10 at Ex. B). After a hearing on March 9, 1999, and considering written briefs filed on April 12, 1999, the Arbitrator concluded that the grievance was without merit. (*Id.*).

In reaching his conclusion, the Arbitrator determined that the layoff procedures provided in the collective bargaining agreement were written with production employees in mind and required the Company to layoff the least senior employees in the plant even if they were in classifications that were either under-staffed or fully staffed. (*Id.*). In 1985, however, the Company began employing skilled employees and routinely exempted them from layoffs. (*Id.*). The Union, moreover, acquiesced in this practice.[1] (*Id.*).

Based on the years of acquiescence, the Arbitrator concluded that a jointly recognized right to exempt skilled employees from layoffs, which was not specified in the language of the collective bargaining agreement, existed. (*Id.*). Accordingly, the Arbitrator held that the Company did not violate Article VIII(A) of the collective bargaining agreement and denied the Union's grievance. (*Id.*).

The Union subsequently filed this action pursuant to Section 301 of the Labor Management Relations Act of 1947, 29 U.S.C. § 185, and the American Arbitration Act, 9 U.S.C. § 1, *et seq.* The Union moves this Court to vacate the arbitration decision and hold that the Company violated the terms of the collective bargaining agreement.

### DISCUSSION

The Supreme Court has made clear that courts must give an arbitrator's decision substantial deference because it is the

---

1. The Arbitrator found that Joyce Yant, the human relations specialist responsible for implementing layoffs, followed the same layoff procedure in May 1997 that she had been following for years. (*Id.*). According to Yant, the Company began hiring employees with special skills in 1985 and exempted them from all layoffs since that time. (*Id.*). Further, layoff records confirmed that the five layoffs prior to the layoff at issue excluded skilled employees with low seniority. (*Id.*).

arbitrator's construction of the collective bargaining agreement, not the court's construction, to which the parties have agreed. *See United Paperworkers Intern. United Paperworkers International Union v. Misco,* 484 U.S. 29, 37–38, 108 S.Ct. 364, 98 L.Ed.2d 286 (1987). Indeed, an arbitrator's factual errors and even misinterpretation of a collective bargaining agreement are not subject to reconsideration by the court. *Id.* at 36–38, 108 S.Ct. 364 ("[A]s long as the arbitrator is even arguably construing or applying the contract and acting within the scope of his authority, that a court is convinced he committed serious error does not suffice to overturn his decision."). The arbitrator's decision will be upheld so long as it "draws its essence from the collective bargaining agreement" and is not merely the arbitrator's "own brand of industrial judgment." *United Steelworkers of America v. Enterprise Wheel & Car Co.,* 363 U.S. 593, 597, 80 S.Ct. 1358, 4 L.Ed.2d 1424 (1960).

■ An arbitrator, however, does not have unfettered discretion. An "arbitrator is confined to the interpretation and application of the collective bargaining agreement, and although he may construe ambiguous contract language, he is without authority to disregard or modify plain and unambiguous provisions." *Dobbs, Inc. v. Local No. 614, Int'l Brotherhood of Teamsters,* 813 F.2d 85, 86 (6th Cir.1987). When an arbitrator disregards the collective bargaining agreement and its terms or departs from arguably construing the contract, the court must vacate the award. The Sixth Circuit in *Dobbs* identified four ways in which an arbitrator may depart from the essence of the agreement:

> (1) an award conflicts with express terms of the agreement; (2) an award imposes additional requirements not expressly provided in the agreement; (3) an award is without rational support or cannot be rationally derived from the terms of the agreement, and (4) an award is based on general considerations of fairness and equity instead of the precise terms of the agreement.

*Dobbs,* 813 F.2d at 86 (quoting *Cement Divisions, National Gypsum Co. v. United Steelworkers of America,* 793 F.2d 759, 766 (6th Cir.1986)).

Here, the Union argues that the Arbitrator's decision should be vacated because he disregarded the plain and unambiguous provisions· of the collective bargaining agreement. I disagree.

The Supreme Court has held that, in resolving grievances, arbitrators may refer to sources other than the collective bargaining agreement for guidance:

> The collective bargaining agreement ... is more than a contract; it is a generalized code to govern a myriad of cases which the draftsmen cannot wholly anticipate.... The collective agreement covers the whole· employment relationship. It calls into being a new common law—the common law of a particular industry or of a particular plant.... Gaps may be left to be filled in by reference to the practices of the particular industry and of the various shops covered by the agreement.... The labor arbitrator's source of law is not confined to the express provisions of the contract, as the industrial common law—the practices of the industry and the shop—is equally a part of the collective bargaining agreement although not expressed in it.

*United Steelworkers v. Warrior & Gulf Navigation Co.,* 363 U.S. 574, 578–583, 80 S.Ct. 1347, 4 L.Ed.2d 1409 (1960) (internal citations omitted); *Folger Coffee Company v. International Union, Automobile, Aerospace & Agricultural Implement Workers of America-UAW, Local Union No. 1805,* 905 F.2d 108, 110–111 (5th Cir.1990) (same); *Manville Forest Products Corp. v. United Paperworkers International Union,* 831 F.2d 72,· 75 (5th Cir.1987); *see also Sullivan, Long & Hagerty, Inc. v. Local 559 Laborers' International Union,* 980 F.2d 1424, 1428–1431 (11th Cir.1993) (reversing the district court's decision to vacate the arbitrator's ruling· despite apparently clear contract language).

**1116**

The Arbitrator in this case arguably construed the collective bargaining agreement while using the past practices of the parties as guidance. The Arbitrator, based on his knowledge of the collective bargaining agreement, concluded that the layoff procedures contained in Article VIII(A) were written with production employees—not skilled employees—in mind. The Arbitrator then implicitly proceeded to fill the gap in the collective bargaining agreement with respect to skilled employees by referring to the Company's practice of exempting skilled workers from layoffs and the Union's acquiescence in that practice. Based on this practice, the Arbitrator denied the Union's grievance.

Because I must affirm the Arbitrator's decision "as long as [he] is even arguably construing or applying the contract," I shall deny the Union's motion for summary judgment and grant the Company's motion for summary judgment. *Misco*, 484 U.S. at 38, 108 S.Ct. 364.

### CONCLUSION

It is, therefore,

ORDERED THAT

1. The International Brotherhood of Electrical Workers, Local Union No. 1654's motion for summary judgment is denied; and

2. Philips Display Components' cross-motion for summary judgment is granted.

So ordered.