**F I L E D**

**UNITED STATES COURT OF APPEALS**

**October 24, 2006**

**TENTH CIRCUIT**

ROBERT P. HERMANNS,

      Plaintiff - Appellant,

v.

ALBERTSON'S, INC.,

      Defendant - Appellee.

No. 04-4298

(D.C. No. 2:04-CV-617-DB)

(D. Utah)

**ORDER AND JUDGMENT**[*]

Before **HARTZ**, **McKAY**, and **TYMKOVICH**, Circuit Judges.

Appellant Robert Hermanns served as an executive at American Stores Company ("ASC"), a food and drug retail chain, for roughly three years before being terminated without cause in 1997. As part of his employment, Mr. Hermanns entered into an employment agreement with ASC (the "Agreement") that provided for, among other things, a Special Long Range Retirement Plan ("SLRRP") benefit package. The SLRRP obligated ASC to pay Mr. Hermanns approximately $300,000 per year for twenty years from the time he turned fifty-seven years old. Payment of the SLRRP was conditioned on

---

[*]This order and judgment is not binding precedent, except under the doctrines of law of the case, res judicata, and collateral estoppel. The court generally disfavors the citation of orders and judgments; nevertheless, an order and judgment may be cited under the terms and conditions of 10th Cir. R. 36.3.

Mr. Hermanns' compliance with the Agreement's non-compete provisions. Specifically, under Section VI-B of the Agreement, Mr. Hermanns' SLRRP benefits would terminate upon his accepting employment with "a business endeavor anywhere in the United States competing, as defined in Section VIII-B4 hereof, with the Company or any of its subsidiaries . . . unless waived in writing by the Board of Directors of the Company."[1]  (R., vol. 1, at 62.)

In 1999, ASC completed a reverse triangular merger with Albertson's, Inc. ("Albertsons").  As a result, ASC became a wholly owned subsidiary of Albertsons.  The parties dispute the extent to which ASC functioned outside of Albertsons' direct control following the merger.  The arbitrator found that, post-merger, "ASC continues in existence as a Delaware corporation with bylaws and its own board of directors and officers who are employees of [Albertsons]."  (R., vol. 3, at 1158 ¶ 14.)

In both 2000 and 2001 Mr. Hermanns was due and received his SLRRP benefits from Albertsons, not ASC.  He received waivers from Albertsons' board of directors during this time to permit him to serve as an executive of a small, but competing, grocery chain.  In 2002, however, Albertsons refused to grant Mr. Hermanns a waiver were he to accept employment with Associated Grocers,

_____

[1] Section VIII-B4 defines competition to mean "a retail establishment in the food or drug business in direct competition with a business operated by the Company or its subsidiaries."  (R., vol. 1, at 65.)

which Albertsons viewed as a significant competitor in the Northwest market. According to Albertsons, its market area, as opposed to ASC's former area, was the relevant measure for the scope of the non-compete provisions. Mr. Hermanns nevertheless accepted employment with Associated Grocers, whereupon Albertsons terminated its SLRRP payments.

Mr. Hermanns initiated binding arbitration with Albertsons to recover the SLRRP benefits. The arbitrator found in favor of Albertsons, and the district court denied Appellant's subsequent motion to vacate that award.

In considering a district court's decision concerning a motion to vacate an arbitration award, we review questions of law *de novo* but findings of fact for clear error. *See Bowen v. Amoco Pipeline Co.*, 254 F.3d 925, 931 (10th Cir. 2001). Our standard of review over the underlying arbitral decision, however, is far more limited. Appellate review of "arbitral awards is among the narrowest known to the law." *Litvak Packing Co. v. United Food & Commercial Workers, Local Union No. 7*, 886 F.2d 275, 276 (10th Cir. 1989). Consequently, "as long as the arbitrator is even arguably construing or applying the contract and acting within the scope of his authority, that a court is convinced he committed serious error does not suffice to overturn his decision." *United Paperworkers Int'l v. Misco, Inc.*, 484 U.S. 29, 38 (1987). We lack the authority to review whether the arbitrator rightly or wrongly decided the matter and can only examine whether the arbitrator's decision "draws its essence from the agreement." *Pub. Serv. Co. of*

*Colo. v. Int'l Bhd. of Elec. Workers, Local Union No. III*, 902 F.2d 19, 20 (10th

Cir. 1990) (per curiam); *see also United Steelworkers of Am. v. Enter. Wheel &

Car Corp.*, 363 U.S. 593, 599 ("[T]he courts have no business overruling [the

arbitrator] because their interpretation of the contract is different from his.").

Appellant argues that the arbitrator both exceeded his authority and

manifestly disregarded clearly established law in arriving at his decision, though

these two separate bases actually interrelate. According to Appellant, the

Agreement expressly identified ASC as the "Company." This is evident.

Appellant asserts, however, that the arbitrator exceeded his authority by

impermissibly replacing Albertsons as the "Company" following the merger. As

a result, Appellant charges that the arbitrator "re-wrote" the Agreement in a way

that altered its "fundamental nature." (Appellant's Br. at 11.) Appellant cites

several cases granting vacature where an arbitrator overstepped his bounds by

providing an unwarranted interpretation of an otherwise unambiguous contractual

term. But this is not such a case.

Following the merger,[2] the arbitrator found that the evidence reflected that

---

[2] Albertsons and ASC effected a reverse triangular merger, or reverse phantom merger. In a reverse triangular merger, the acquiring company (Albertsons) creates a transitory subsidiary (Abacus Holdings, Inc.) for the purpose of the merger, which merges into the target company (ASC). The target company's shareholders are given consideration for their shares, and their stock is cancelled; the target company remains a corporation but becomes a subsidiary of the acquiring company. Thus, ASC remained as a legal entity but had only one

(continued...)

-4-

a change of control occurred at ASC. We are not permitted to disturb this finding. Appellant urges that the arbitrator's finding that, post-merger, "ASC continues in existence as a Delaware corporation with bylaws and its own board of directors and officers," (R., vol. 3, at 1158 ¶ 14), is conclusive proof that ASC continues to be the "Company" under the contract. However, this omits the remaining portion of that finding, wherein the arbitrator found that the ASC board of directors and officers became employees of Albertson's. (*Id.*) We cannot say, as Appellant urges, that this case presents an instance where the arbitrator substituted his own definition for one expressed in the contract. The arbitrator necessarily needed to determine the appropriate parties to the Agreement following the merger. The record reveals the parties' disagreements over ASC's ability to function as an entity distinct from Albertsons' control post-merger, an issue on which the arbitrator made factual determinations that were both within his authority and outside ours to question.

The weakness of Appellant's position is best indicated by his contention that the "[c]ontract as written [ ]clearly does not preclude [him] from competing with ASC's parent company." (Appellant's Br. at 24 (emphasis omitted).) When the contract was written, ASC had no parent company. It strikes this court as odd

---

[2](...continued)
new shareholder, namely, Albertsons, which, despite Appellant's protestations, the arbitrator appears to have found assumed management and control of ASC.

that a contract would define the parties to it by referencing hypothetical, future controlling entities. Rather, as in most contracts, changes in ownership are provided for in other contract provisions. Here, the arbitrator relied on Section XIII-G of the Agreement to aid his understanding of the word "Company" following the merger.[3] The arbitrator concluded that Albertsons, "through the merger[,] is the successor to ASC (*within the meaning of Section XIII-G*) in the ASC Employment Agreement." (R., vol. 3, at 1162 ¶ 39 (emphasis added).) Appellant asserts that the arbitrator manifestly disregarded longstanding corporate law on the issue of successorship as well as recent law concerning reverse triangular mergers in arriving at this conclusion.[4] We observe that Appellant ignores the emphasized parenthetical clause that restricts his finding of successorship based on the extremely broad "or otherwise" language of Section XIII-G. Of course, the arbitrator also permissibly relied upon extrinsic evidence that supports his interpretation.

---

[3] Section XIII-G provides: "This Agreement shall be binding upon and inure to the benefit of the Parties hereto and the Company's successors and assigns, whether by merger, consolidation or otherwise." (R., vol. 1, at 68.)

[4] Reverse triangular mergers afford more favorable tax consequences and permit nontransferability of assets and liabilities, unlike plain vanilla consolidations. The parties cited to several cases in an attempt to establish whether reverse triangular mergers permit the parent to be considered the target's successor-in-interest. Contrary to the parties' assertions, the law on this issue is not clear, nor need we make it so here given the arbitrator's parenthetical qualification of his use of the term "successor." We note that Appellant conceded that had this been a plain vanilla merger, he would be without recourse.

Based on the broad authority granted arbitrators, we must say that the decision here clearly finds its essence in those provisions of the contract relating to defining the "Company" following a merger. Although this court would have been inclined to examine more closely ASC's corporate form given the use of the reverse triangular merger, it is not our role to do so when confronting arbitral decisions. "'[A]s we have explained and emphasized, our function is to do no more than determine whether the arbitrator's decision was drawn from the Agreement and the several permissible sources he employed to enable him to render his . . . [a]ward.'" *Int'l Bhd. of Elec. Workers, Local Union No. 611 v. Pub. Serv. Co. of N.M.*, 980 F.2d 616, 619 (10th Cir. 1992) (alteration in original) (quoting *NCR Corp. v. Int'l Ass'n of Machinists & Aerospace Workers, Dist. Lodge No. 70*, 906 F.2d 1499, 1506 (10th Cir. 1990)).

**AFFIRMED**.

Entered for the Court

Monroe G. McKay
Circuit Judge